Jeanette REYNOLDS, as Administrator of the Estate of Paul Reynolds, Deceased, and Jeanette Reynolds, Individually, Plaintiffs,

v.

COUNTY OF SAN DIEGO, Jeffrey Jackson, Sheriff Jim Roache, and Does I through XX, Inclusive, Defendants.

Denise REYNOLDS, Plaintiff,

v.

COUNTY OF SAN DIEGO, Jeffrey Jackson, Sheriff Jim Roache, and Does I through XX, Inclusive, Defendants.

Civ. Nos. 92–1342R(CM), 93–0194R(CM).

United States District Court, S.D. California.

July 14, 1994.

Tom Adler and Ellen Faye Gross, Adler & Marrinan, San Diego, CA, for plaintiffs Jeanette Reynolds and Denise Reynolds.

Morris G. Hill, Deputy County Counsel, Office of County Counsel, San Diego, CA, for defendants County of San Diego and Sheriff Jim Roache.

Gerald P. Schneeweis, Morris, Polich & Purdy, San Diego, CA, for defendant Jeffrey Jackson.

## AMENDED ORDER GRANTING JACKSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT [1]

RHOADES, District Judge.

This is a motion for summary judgment by defendant Jeffrey Jackson, a Sheriff's deputy, in a wrongful death action arising from the shooting death of Paul Reynolds. On February, 4, 1994, the County of San Diego joined the motion. (County's Notice of Joinder). Two suits were filed: one by the decedent's wife, Jeanette Reynolds, and one by the decedent's mother, Denise Reynolds. The actions have been consolidated. The complaints asked for damages under 42 U.S.C. § 1983, as well as under state civil rights law and tort.

### I. Statement of Facts

At 1:00 a.m. on Feb. 18, 1992, Joseph Kircheval, a gas station attendant, noticed Reynolds acting strangely near the gas pumps. Reynolds approached the window, but did not respond when the attendant asked if he could help him with something. Reynolds placed his face up against the glass, and then responded when the attendant repeated the question by saying "yes I think you can." Then, Reynolds walked away from the window back toward the pumps and picked up a squeegee. After asking Reynolds to replace the squeegee, the attendant called the Sheriff's department to explain the situation.

Kircheval next noticed that Reynolds had drawn a knife [2], which he was "sniffing or licking." Kircheval called the Sheriff's department again and informed them that Reynolds was now armed.

On the evening of the incident Deputy Jackson was on routine patrol in the area.

---

1. The Court's amended order is issued for purposes of publication.

2. Reynolds's weapon is referred to by the parties as both a "marlin spike" and a "knife." Based on the photograph supplied by the County, the weapon has a spiked portion that is approximately 3 and ½ inches long and a blade that folds like a pocket-knife. A marlin spike is actually a spike-shaped tool for untying nautical knots which only vaguely resembles Reynolds's weapon. Even though the weapon does not meet the dictionary definition of a marlin spike, the court uses both "knife" and "marlin spike" in this decision.

Neither of Kircheval's calls were relayed to Deputy Jackson prior to his confrontation with Reynolds. Deputy Jackson was stopped by a passerby who informed him that someone was acting strangely down the road, and appeared to have some kind of bottle in his hand.

Jackson drove toward the gas station, and discovered Reynolds's car blocking traffic in the road, with the driver's door open. As Jackson approached the car on foot, Mr. Wapnowski, a truck driver who was delivering gasoline to the station, yelled at Jackson to "stop" Reynolds. Mr. Wapnowski indicated that Reynolds had a knife or a weapon. Jackson then saw Reynolds being chased away from the gas truck by the driver, who was yelling. According to Mr. Wapnowski, Reynolds moved with quick, sudden, jerking motions. Jackson drew his gun and told Reynolds to stop. Jackson saw Reynolds's knife and told Reynolds to put his hands in the air. Reynolds complied. At that point, Michael Tucker, a passing motorist stopped to observe the altercation.

Jackson told Reynolds to lie down on the ground and keep his hands where Jackson could see them. Reynolds lay down on the ground with the knife in his right hand. As Jackson moved closer to Reynolds, Jackson ordered Reynolds's to drop the knife from his hand. Reynolds put the knife on the ground next to his body. According to Mr. Wapnowski, as Deputy Jackson approached Reynolds, Jackson was slowly and constantly telling Reynolds not to move. Then, as Jackson approached, Reynolds suddenly sat up and grabbed the knife.

Jackson alleges that, as he approached Reynolds, he attempted to kick Reynolds in order to disarm him. But Reynolds was able to avoid the kick, although he was still in a sitting position. Jackson approached Reynolds from behind, put his knee in Reynolds's

back, and told him to drop the weapon. Reynolds did not drop the weapon. Instead, he made a motion which Jackson believed was an attempt to open the marlin spike (which apparently opens like a switch blade). Jackson pressed his gun into Reynolds's neck and told him to drop the knife. Reynolds suddenly jerked to the side and made an upward motion with his arm, swinging the knife toward Jackson. Jackson pulled the trigger on the gun, but the gun did not fire because it was pressed against Reynolds's neck. Jackson immediately pulled back and squeezed the trigger again. Reynolds died of a single gunshot wound to the neck.

Jeanette Reynolds, the decedent's wife and the administrator of decedent's estate, filed suit against Deputy Jeffrey Jackson, Sheriff Jim Roache, the County of San Diego, and Does I–XX inclusive. She has brought the following seven causes of action: (1) violation of decedent's rights secured by 42 U.S.C. Sections 1893, 1986, and 1988, and California Civil Code section 52.1; (2) wrongful death; (3) assault and battery; (4) negligence; (5) negligent hiring; (6) loss of consortium; and (7) violation of the California Public Records Act. In her complaint, Reynolds alleges that the actions of Deputy Jackson are properly imputed to Defendant County of San Diego.

■ Denise Reynolds, decedent's mother, also brings suit against Jeffrey Jackson, Sheriff Jim Roache, and the County San Diego alleging (1) violation of the decedent's civil rights under 42 U.S.C. section 1983 and California Civil Code section 52.1; (2) wrongful death [3]; (3) assault and battery; (4) negligence; and (5) negligent hiring. Denise Reynolds similarly imputes Jackson's actions to the County.

■ On January 28, 1994, Defendant Jackson filed a motion for summary judgment.[4]

---

**3.** In Denise Reynolds's claim for wrongful death, she argues that she is entitled to damages for loss of love, companionship, comfort, etc. Denise Reynolds claims that this loss of companionship and society constituted violations of the California State Constitution and the United States Constitution, which entitles her to damages. The Court therefore finds that Denise Reynolds has stated a claim on her own behalf under 42 U.S.C. § 1983.

**4.** On February 4, 1994, the County of San Diego and Sheriff Jim Roache joined in Jackson's motion for summary judgment. The notice of joinder states simply that defendants "join in the motion for summary judgment...." *Id.* Because the joinder does not properly indicate which of Jackson's legal arguments apply with equal force to the County and to Roache, this order cannot reach those issues. Therefore, the motions for summary judgment filed by the

In support of his motion, Jackson claimed that he acted reasonably in shooting the decedent and therefore Plaintiffs do not have a valid cause of action. Jackson's motion for summary judgment is granted for the reasons set forth below.

## II. Summary Judgment Standard

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c), *Celotex*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553. If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the nonmoving party's claim. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). Instead, "the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885, 110 S.Ct. at

3187 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553).

Once the moving party meets the requirement of rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

■ To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.* The moving party is entitled to judgment as a matter of law if the nonmovant fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id.*

## III. Denise Reynolds's Standing to Bring Suit.

Jackson and the County have moved for the dismissal of claims filed by Denise Reynolds, alleging that she does not have standing to bring suit. Denise claims that she has standing to pursue her claim for loss of companionship, society and comfort resulting from the death of her son pursuant to 42 U.S.C. section 1983. The state law and federal law claims are addressed separately below.

### A. State Law Claim

■ Denise Reynolds has filed a wrongful death action. Under California law, a wrongful death action may be brought on behalf of a decedent by the decedent's heirs or person-

County and Sheriff Roache are denied without prejudice to be filed again.

al representative. *See* Cal.Civ.Proc.Code § 377(a) (West Supp.1991). An heir includes (1) persons who are heirs according to the intestate succession provisions of the probate code, and (2) dependent parents of the decedent, whether or not they are heirs according to the intestate succession provisions of the probate code. *Id.* § 377(b)(1)–(2).

### 1. Parent as Intestate Heir

Under Section 377(a), Denise Reynolds cannot bring the wrongful death action as an heir because the decedent has a surviving spouse, Jeannette Reynolds, who has filed a claim for wrongful death. Since Denise Reynolds does not have standing as an intestate heir, she can only bring a state law cause of action if she was dependent on the decedent.

### 2. Dependent Parents

Denise Reynolds can maintain a wrongful death action only if she can prove that she was dependent upon her son. The term "dependent" refers to financial dependency, not emotional dependency. *Perry v. Medina,* 192 Cal.App.3d 603, 608, 237 Cal.Rptr. 532 (1987).

To demonstrate financial dependency, " '[t]he parents must show that they were *actually* dependent, to some extent, upon the decedent for the *necessaries* of life.' " *Id.* at 610, 237 Cal.Rptr. 532 (quoting *Hazelwood v. Hazelwood,* 57 Cal.App.3d 693, 698, 129 Cal. Rptr. 384 (1976)) (emphasis in original). Denise has not claimed to have been dependent on her son. As a matter of law, Denise Reynolds cannot maintain a state law cause of action under California Civil Procedure Code section 377(b)(2).

### B. Federal Law Claims

■ Denise Reynolds also seeks relief under 42 U.S.C. § 1983 for alleged violations of her own civil rights due to her son's death. This amounts to a federal wrongful death action brought by the plaintiff on her own behalf. Denise argues that she has a fundamental right under the Fourteenth Amendment to the continued companionship and society of her son, and that the county's violation of this right is actionable under § 1983.

The County argues that standing to bring federal wrongful death claims under section 1983 is governed by state law, and that Denise Reynolds does not have standing under the California Code to assert such a claim.

■ The interface between state law and § 1983 is governed by 42 U.S.C. § 1988. Section 1988 requires a three-step analysis in considering whether to apply state law in a civil rights action. First, the court must first look for a federal rule. If no federal rule governs, the court must next look for a state law rule, and, (finally) apply it "only if it is not inconsistent with the Constitution and laws of the United States." *Wilson v. Garcia,* 471 U.S. 261, 267, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).

The federal rule does not answer the inquiry and therefore state wrongful death statutes have been borrowed to supplement § 1983 in the general area of wrongful death actions. *See, e.g., Bell v. City of Milwaukee,* 746 F.2d 1205, 1235–41 (7th Cir.1984); *Agresta v. Sambor,* 687 F.Supp. 162, 166 (E.D.Pa.1988).

As indicated above, the state law rule in this case will not allow Denise to maintain an action for her son's injuries. By applying this rule to the federal claims, Denise Reynolds is also barred from bringing a federal law action. The only remaining question is whether this result is consistent with the policies underlying 42 U.S.C. § 1983.

"The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann,* 436 U.S. 584, 590–91, 98 S.Ct. 1991, 1995–96, 56 L.Ed.2d 554 (1978). Because Denise cannot bring suit under § 377, that section, in addition to prohibiting the plaintiff from recovering for Reynolds's injuries, would bar her recovery for her own loss of Reynolds companionship as a result of his death. This result is inconsistent with the § 1983 goals of compensation and deterrence when applied to Denise's *own* injuries.

Barring both state and federal claims denies Denise any compensation for her own constitutionally protected interest in Reyn-

olds's companionship. It also limits the deterrent effect of § 1983 by allowing state actors to avoid compensating for the full extent of the injuries they cause. California law should not be applied to prohibit Denise from bringing a cause of action under § 1983 for violations of her own constitutionally protected interests.

■ The question therefore becomes whether Denise Reynolds has a constitutionally protected interest in the companionship of her son. Under *Smith v. Fontana*, 818 F.2d 1411 (9th Cir.1987), *cert. den.* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), Denise has alleged the violation of a constitutionally protected right. The Ninth Circuit's approach to this issue was laid out succinctly in *Fontana*. In *Fontana*, the Court stated:

> [the Supreme Court] has interpreted the due process clause to protect the interests of parents "in maintaining a relationship with their children," we concluded that "a parent has a constitutionally protected liberty interest in the companionship of his or her child."

*Id.* at 1418 (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 654, 655 (9th Cir.1985)) (citations omitted). The Court noted that even though the Supreme Court has not addressed whether the government's taking of the life of a family member deprives the other family members of a cognizable liberty interest, its language supports such a holding. The *Fontana* Court stated that the Ninth Circuit has determined that parents can challenge a state's severance of the parent-child relationship under § 1983 as interfering with the liberty interests in the companionship and society of their children. *Id.;* see also *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991).

The parent's constitutionally-protected interest is not extinguished as a matter of law when an adult child leaves his parents' home and marries. The parent of such a child may state a cause of action under § 1983 when she alleges that the state terminated her parent-child relationship without due process of law.

## IV. Civil Rights Claims

Both Denise and Jeannette Reynolds have standing to bring federal causes of action against Officer Jackson and the County of San Diego under section 1983. However, Jackson has moved for summary judgment on the civil rights claims on the grounds that he is entitled to immunity.

*A. Police Officers are Immune from Suit Where Their Actions are Objectively Reasonable*

■ Apprehension by the use of deadly force is a seizure, and subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court announced the constitutional standard which governs a citizen's claim that law enforcement officials used excessive force in the course of making a "seizure" of his person under the Fourth Amendment. The Court held that police officers are entitled to immunity from suit where their actions were "objectively reasonable." *Id.* The Court noted that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872. *Graham* involved injuries resulting from the stop and seizure of a person who later was exonerated of any wrongdoing.

More recently, in *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Court held that:

> qualified immunity shields agents ... from suit for damages if a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the officers possessed.

*Id.* at ——, 112 S.Ct. at 536. Furthermore, the Court in *Hunter* noted that "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ Denise and Jeanette Reynolds both assert that Jackson is not entitled to quali-

fied immunity in this case because in the Ninth Circuit the qualified immunity inquiry is the same as the inquiry made on the merits. *Hopkins v. Andaya,* 958 F.2d 881, n. 3 (9th Cir.1992). However, this principle means only that the same facts underlying the claim are used to determine whether the officer is entitled to qualified immunity. *See, e.g. Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir.1991) (defendant in "unreasonable force" case is entitled to qualified immunity if "the totality of the circumstances ... justified the particular type of seizure").

B. *Courts Have Found That Officers in Similar Situations Acted Reasonably*

■■■ Particularly where the suspect is armed and in close proximity to the officer, courts have found that officers may use deadly force to defend themselves. For example, in a related context, the Supreme Court has held:

Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

*Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). Although *Garner* specifically addressed the degree of force officers could use to prevent escape, the case also more generally addresses the constitutional limits of the use of deadly force. The linchpin of the *Garner* holding is that officers who have probable cause to believe they are dealing with an armed and dangerous suspect may use deadly force without violating the suspect's constitutional rights.

In addition, *Rhodes v. McDannel,* 945 F.2d 117 (6th Cir.1991) and *Estate of Jackson v. City of Rochester,* 705 F.Supp. 779 (W.D.N.Y. 1989) lend further support to the defendants' position. In both cases the district courts found that officers who shot suspects armed with knives were entitled to immunity. In *Rhodes,* the officers responded to a report that a woman was being chased around her home by a man with a machete. The woman let the officers into the house and escorted them to the living room where they encountered the suspect wielding a machete. The

suspect advanced toward them with the weapon, and the officers ordered him to drop the knife. He failed to heed their warnings, and when he advanced within a distance of four to six feet, one of the officers fired his weapon and killed the suspect. The District Court found that the officer's conduct was reasonable, and granted summary judgment. The Sixth Circuit affirmed. *Id.,* 945 F.2d 117.

Similarly, in *Estate of Jackson v. City of Rochester, supra,* the District Court granted a motion for summary judgment based on a finding that the officer's actions were reasonable and he was entitled to immunity. In that case, the officer confronted the suspect in a video arcade. The suspect attempted to leave the arcade, but after the officer followed him to the front door, the suspect turned toward the officer and placed his hand inside his jacket. The officer asked the suspect to put his hand down. When the suspect failed to comply, the officer removed his revolver and pointed it at the ceiling. The suspect then pulled a knife from his jacket. The officer twice ordered the suspect to drop the knife, and then when the suspect lunged toward him, the officer fired his revolver.

The Court found that the plaintiffs had failed to submit any evidence that the officer had acted contrary to New York law or to police rules. The Court concluded that it was objectively reasonable for the officer to believe that the suspect posed a real and imminent threat of death or bodily harm, or at least officers of reasonable competence could have disagreed as to whether such force was necessary. *Jackson,* 705 F.Supp. at 784.

In addition, in *Reese v. Anderson,* 926 F.2d 494 (5th Cir.1991), the Appellate Court reversed a district court's denial of summary judgment where an officer killed a passenger in a car which had been stopped after a high-speed chase. The officer had drawn his gun and ordered the car's occupants to raise their hands. The passenger turned away and reached toward the floorboard. The officer shot the passenger once in the head, killing him. Later investigation revealed the pas-

senger was unarmed. However, the Court found that the officer's belief that the suspect posed a threat of injury was not unreasonable. *Id.* at 500.

These cases all support the general principle that an officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer. The high numbers of officer mortalities in recent years illustrate the unreasonableness of such a notion.

Where the suspect was confronted by an armed police officer, and failed to heed the officer's request to drop a weapon, Jackson reasonably believed that "the suspect pose[d] a threat of serious physical harm either to the officer or to others." *Garner,* 471 U.S. at 11, 105 S.Ct. at 1701.

Denise and Jeanette Reynolds cite *Hopkins v. Andaya,* 958 F.2d 881 (9th Cir.1992) in support of their opposition to the summary judgment motion. In *Hopkins,* the Ninth Circuit reversed the district court's grant of summary judgment. However, *Hopkins* can be distinguished from the case at bar.

In *Hopkins,* the officer alleged that the suspect grabbed his baton and struck him 10 or 20 times, including on the head. The officer then pulled his gun and shot the suspect six times. The officer then retreated across the street, called for backup, and reloaded his gun. The suspect pursued the officer across the street. The officer got behind a car and shot the suspect four more times, killing him.

In *Hopkins* the suspect had already been shot six times, was unarmed, and was some distance from the officer when the officer fired the fatal shots. In *Hopkins,* it was not reasonable for the officer to believe that a seriously injured, unarmed suspect "posed a threat of serious physical harm." In the case at bar, there is uncontroverted evidence that

Reynolds was armed and in a position to inflict grave bodily harm on Jackson at the time Jackson fired his gun.[5]

**C.** *There are No Material Facts in Controversy*

Plaintiffs contend that summary judgment is inappropriate because there are controverted facts. This contention is not, however, supported by the record.

*1. Expert Opinion as to Whether Actions Were Reasonable Does Not Present A Triable Issue of Fact*

Plaintiffs have retained experts who contend that Jackson could have taken other actions in his confrontation with Reynolds. They allege that by talking softly to the suspect or waiting for a backup, Jackson might have avoided putting himself in a situation where Reynolds posed a serious threat of physical injury. (Reiter Depo. at 116 and 165). However, this position ignores the Supreme Court's holding in *Hunter v. Bryant,* 502 U.S. at ——— ———, 112 S.Ct. at 536–37. There, the Court held that the fact that experts disagreed with the officer's actions did not render the officer's actions 'unreasonable.' Rather, the Court held the question is not "whether another reasonable, or more reasonable, interpretation of events can be constructed ... after the fact." *Id.* Plaintiffs' experts do not contend that Jackson acted unreasonably by firing at the suspect when Reynolds picked up his knife and lunged toward the officer. At that point, Jackson had no way of knowing that Reynolds was psychologically impaired, nor does that fact in any way affect the threat that Reynolds posed to the officer.

 Furthermore, under *Act Up!/Portland v. Bagley,* 988 F.2d 868, 872 (9th Cir.1993) "if a reasonable officer could have believed that [an officer's actions] were justified" the officer is entitled to qualified immunity. "This is so notwithstanding that reasonable officers could disagree on this issue ..." *Id.* at 872 (citing *Malley v.*

---

**5.** In addition, there was substantial medical evidence in *Hopkins* indicating that the officer had not in fact been struck on the head, as he alleged. The fact that he had partially lost consciousness appeared to be a material fact in his defense.

Furthermore, there were no other eyewitnesses to the event. In this case there are two eyewitnesses which corroborate Jackson's story in all its material elements.

*Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Thus, the fact that an expert disagrees with the officer's actions does not preclude a finding that the officer is entitled to immunity.

*2. Inconsistencies Regarding Jackson's Attempts to Kick Reynolds*

■ Second, Plaintiffs contend that there is a factual controversy. Jackson claims he attempted to kick the weapon away from Reynolds. One eye-witness says he did not see the officer attempt to kick the gun away. In addition, Jackson's original statement to the homicide detectives did not mention a kick. This fact, however, does not materially impact a determination of whether Jackson's actions were objectively reasonable. In evaluating the motion the Court can simply assume the facts in accordance with Plaintiffs' allegation, i.e. that Jackson did not attempt to kick Reynolds. This assumption does not render Jackson's actions unreasonable.

Furthermore, the inconsistency in Jackson's testimony does not undermine the credibility of the remaining facts. At least two neutral witnesses observed the incident, and confirm the fact that Reynolds picked up his knife and turned toward Jackson after Jackson instructed him to drop the weapon. (Wapnowski Depo. at 26; Tucker Depo. at 19).

*D. Officer Jackson is Entitled to Immunity*

The Court finds that Jackson acted reasonably when confronted with the threat of serious bodily injury and therefore is entitled to immunity. Defendant Jackson's motion for summary judgment is therefore granted as to the 42 U.S.C. § 1983 action. The civil rights action against the County of San Diego was not raised in this motion and therefore those claims are not affected by this ruling.

**V. State Law Causes of Action**

Both Jeanette and Denise Reynolds have alleged state law violations. As discussed above, Denise Reynolds does not have standing to bring a state law wrongful death action. Jeanette Reynolds has alleged civil rights violations under California Civil Code Section 52.1, wrongful death, assault and bat-tery, negligent hiring, loss of consortium and violation of the California Public Records Act.

*A. Section 52 Does Not Support Reynolds's Cause of Action*

■ Jeanette Reynolds has filed a cause of action against Jackson and the County of San Diego under California Civil Code Section 52.1. Officer Jackson moves for summary judgment on the grounds that Jackson cannot be held liable for damages under section 52 of the California Civil Code. He argues that he is entitled to immunity from suit based on violations of federal constitutional rights, and that Jeanette Reynolds has failed to allege violations of substantive state constitutional rights. The first issue facing the Court is whether section 52.1 supports a claim for damages in this instance. Section 52.1 provides that:

> (b) Any individual whose exercise or enjoyment of rights secured by the Constitution—or laws of this state, has been interfered with or attempted to be interfered with, as described in subdivision (a), may institute and prosecute—on his—own behalf a civil action for damages.

California Civil Code section 52.1. Defendants argue that section 52.1 does not support a claim for damages because the section applies only to actions taken by private individuals. Defendants argue that constitutional violations by state actors are governed solely by the California Constitution, and that Section 52.1 does not provide damages for violations by state actors.

Jeanette Reynolds points to the language of the statute, which specifically makes reference to persons "whether or not acting under color of law." She alleges that this language authorizes a suit for damages against state actors.

Neither party has cited case law supporting its position. Jeanette Reynolds cites jury instructions promulgated by California's Committee on Standard Jury Instructions which may be used in cases in which a plaintiff seeks damages for a violation of civil rights pursuant to Civil Code section 52.1. Defendants counter with legislative history indicating that section 52.1 was intended

solely as a remedy for victims of hate crimes perpetrated by private individuals such as the Klu Klux Klan.

The Court does not reach this issue, however, because even assuming the code section could be applied to Officer Jackson, it is evident from the foregoing analysis that Jackson is entitled to immunity from an action for federal civil rights violations. Furthermore, Plaintiff has not accused officer Jackson of violating any state constitutional right which is separate and distinct from federal protections. Section 52.1 does not provide any *substantive* protections. Rather, it enables individuals to sue for damages as a result of separate constitutional violations. See Cal.Civil Code, section 52 (providing for damages based on the violation of "rights secured by the Constitution or laws of the United States, or the rights secured by the Constitution or laws of this state ...). As such, Plaintiff Jeanette Reynolds's claim against Officer Jackson under California Civil Code section 52.1 is dismissed.

*B. Officer Jackson is Immune from State Law Claims for Negligence, Wrongful Death, and Assault and Battery*

 Both Jeanette and Denise Reynolds have also filed claims against Jackson under state tort law. Jackson argues that he is immune from liability under Section 820.2 of the California Government Code. Section 820.2 states:

> Except as otherwise provided by this statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused.

Cal.Gov't Code § 820.2. This "discretionary immunity" rule immunizes public employees from liability in performing discretionary acts within the scope of their employment, unless otherwise provided. Legislative Committee Comment to Section 820.2. *Darby v. City of Torrance,* 810 F.Supp. 271, 274 (C.D.Cal.1992).

Plaintiffs argue Jackson is subject to liability under California Government Code Section 820.4. Section 820.4 provides that only government employees who exercise due care are immune from liability for their actions. Section 820.4 states:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

Cal.Gov't Code § 820.4. Plaintiffs claim that Jackson was not acting with due care and therefore cannot rely on statutory immunity. Plaintiffs rely on their paid expert, Lou Reiter, who has filed a declaration stating that in his view Jackson's use of deadly force was unreasonable and unnecessary.

 In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others in the area. *People v. Rivera,* 8 Cal.App.4th 1000, 1007, 10 Cal.Rptr.2d 785 (1992) (citing Cal. Gov.Code § 820.2). *See also Gilmore v. Superior Court,* 230 Cal.App.3d 416, 281 Cal. Rptr. 343 (1991).

In *Gilmore,* the Court of Appeal issued a writ of mandate compelling the lower court to grant the defendant summary judgment in a wrongful death action arising from a fatal shooting by a police officer. In that case, the police officer had been acquitted of criminal charges against him. Plaintiffs argue that *Gilmore* is not applicable here because Jackson has not been acquitted of criminal charges stemming from the shooting. This argument is misplaced.

As discussed, *supra,* police officers are privileged to use force against assailants when the officers reasonably believe the assailants to be armed, and when officers reasonably believe their own safety is in jeopardy. Jackson's split-second decision to use force is exactly the kind of act which section 820.2 was enacted to shield from liability. *People v. Rivera,* 8 Cal.App.4th at 1007, 10 Cal.Rptr.2d at 789.

In *Rivera,* the Court of Appeal affirmed a police officer's use of force when the officer released a police dog to attack a robbery suspect, whom the officer believed was armed. Even though the suspect turned out to be unarmed, the Court of Appeal found

that the officer's use of force was justified because the officer reasonably feared for his safety. *Id.* at 1007, 10 Cal.Rptr.2d at 789. *Cf. Chew v. Gates,* 27 F.3d 1432 (9th Cir. 1994); (where record does not reveal articulable basis for police officer to believe suspect was armed, grant of summary judgment on claim of unreasonable force was improper).

Just as the officer in *Rivera* was entitled to immunity, Jackson is entitled to immunity. As previously established, Jackson's actions were objectively reasonable. Accordingly, Plaintiffs are unable to maintain their state claims. There is no liability for a justifiable homicide. *Gilmore v. Superior Court,* 230 Cal.App.3d 416, 422, 281 Cal.Rptr. 343, 347 (1991).

Jackson's acts were within his discretion and he is therefore protected under section 820.2. In addition Jackson exercised due care in the performance of his duties and therefore his conduct does not fall into the section 820.4 exception.

■ Plaintiffs also argue that liability will attach under section 820. Under section 820, a public employee is liable for injury to the same extent as a private person. Section 820 provides:

(a) Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person.

(b) The liability of a public employee established by this part—is subject to any defenses that would be available to the public employee if he were a private person.

Cal.Gov't Code § 820. As noted in the wording of the statute, however, this section is controlled by section 820.2. Section 820.2, in turn, immunizes public employees who would otherwise be subject to liability under section 820. As such, Jackson is entitled to immunity.

Given the Court's finding that Jackson acted reasonably under the circumstances, the state claims must also be denied.

### C. Plaintiff Cannot State a Claim Under California Government Code Section 6250

■ Plaintiff Jeanette Reynolds alleges that "defendants" have failed to comply with Government Code section 6250 et seq. by withholding documents. However, the Court has not received a verified petition identifying the public records which are being improperly withheld. Furthermore, Plaintiff failed to oppose the motion for summary judgment on this claim raised by Defendant Jackson. The claim is therefore dismissed.

## VI. Conclusion

Denise Reynolds does not have standing to bring a state wrongful death action, and that action is therefore dismissed. Denise Reynolds's and Jeanette Reynolds's federal section 1983 actions against Jackson are dismissed because Jackson is entitled to immunity as a matter of law. Jeanette Reynolds's state law actions under section 52 of the California Civil Code and California Government Code 6250c cannot support the actions as stated in the complaint and are therefore dismissed. Finally, the Court has found that Jackson acted with due care and is entitled to immunity, and therefore the state law actions for wrongful death, negligence, and assault and battery are barred. Defendant Jackson's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.