[Civ. No. 9027. Second Appellate District, Division One.—June 25, 1935.]

MITSU NAKASHIMA, Respondent, v. M. TAKASE, Appellant.

J. Marion Wright for Appellant.

Henry C. Huntington and Marie Murphy Ellis for Respondent.

ROTH, J., *pro tem.*—Plaintiff and respondent is the mother of deceased, Eddie Nakashima, who in company with one Matsuzaki, was shot by defendant and appellant on January 2, 1932, after he and the said Matsuzaki had burglariously broken into appellant's place of business at 523 East Tenth Street in the city of Los Angeles in the night-time, and were apparently in the act of committing another felony, to wit: theft. The facts are summarized at length in the findings of the trial court, some of which are as follows:

"The defendant came to his cafe on the day in question, January 2, 1932, and discovered that the glass in the door near the lock had been cut, but not removed. He clearly anticipated at that time the possibility at least, that the cafe might be robbed and that a felony might be committed; and that his surmise in this respect was correct is borne out by subsequent events. He called the Police Department during the afternoon, between two and three P. M., and conversed with a policeman. He returned to the cafe at 5:30 p. m. with a shotgun and entered the cafe, and secreted himself in the cafe in the dark. At that time it was dark. The interior of the cafe was dark. The defendant had not been there very long before he heard some persons at the front door, and saw

shadows there; then very shortly he heard the glass broken and shortly thereafter the door opened and the forms of two persons entered.

"The position where the defendant had secreted himself was a dark location and such a location that the two persons who had entered could not see or observe him, and such persons were entirely unaware of his presence there. . . . from where the defendant was located, he could see down this passageway and see close to the doorway and could see the forms. He saw them pass from the entrance-way into another portion of the room. . . .

"The two persons in question passed along the passage-way leading westerly and into a room in which was a pool table, and then to the west side of said room and toward the north, then to the northwest corner thereof where there was an open doorway. The decedent, Eddie Nakashima, was one of said two persons; he passed through that doorway and, as soon as he had gotten into the passage-way beyond, which placed him in direct line of fire with the defendant, the defendant fired without first giving a warning and an opportunity to the decedent to disclose who he was. In fact, the Court finds that, if any warning was given, it was given practically contemporaneously with the shooting of the gun. The Court also finds that, immediately that the said Eddie Nakashima went through the doorway and into the passage-way, the defendant blazed away at him; that decedent was unaware of defendant's presence and was not coming towards him. The consequence was that the decedent was shot in the side and a wound resulted from which he subsequently died, on January 28, 1932.

"In order that there should be no question, the Court finds that at least so far as the defendant was concerned, the circumstances of the decedent entering the store were such as to reasonably and properly cause a belief in his mind that the persons in his place of business were attempting a felony; and that, so far as the defendant is concerned, and independent of the question of what their motive might have been, he was justified in believing they were there in the attempted commission of a felony, and that he anticipated the act from his discovery of the cut glass in the door earlier in the day. . . . the evidence is definite that, from the position where the

defendant stood, marked as X on the diagram, from which place he fired the shotgun, he was entirely hidden from these parties and from the decedent, and his whereabouts unknown to them. He did not contact with them at any time in the store prior to the time of the arrival of the police officials. He fired practically without warning, and then immediately went through the passage-way already referred to, directly to the entrance and out into the street. At that point, he assumed a position as a guard over the store.''

Section 197 of the Penal Code provides: ''Justifiable homicide by other persons. Homicide is also justifiable when committed by any person in either of the following cases: . : . 2. *When committed in defense of habitation, property, or person,* against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; . . . ''

Section 198 of the same code provides: ''A bare fear of the commission of any of the offenses mentioned in subdivisions two and three of the preceding section, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.''

■ The findings of the trial court that the defendant ''was justified in believing that they (Nakashima and his partner) were there in the attempted commission of a felony'' and that ''the circumstances . . . were such as to reasonably and properly cause a belief in his (defendant's) mind that the persons in his place of business were attempting a felony . . . '' are sufficient in our opinion to justify the shooting and to exonerate defendant from any civil or criminal liability.

If the deceased had recovered from the wound received, instead of dying, it could hardly be contended that the facts as outlined would have formed a sufficient basis for a cause of action brought by himself for damages. His mother, the respondent here, is in no better position. ■ We accept the trial court's finding that the defendant did not give any warning before shooting. The evidence in support thereof is conclusive. We hold, however, that when two people bur-

glariously break into the premises of another, the person in rightful possession is not called upon to give any warning to prevent another felony, to wit: theft of property, when as a reasonably prudent man he is justified in concluding from the circumstances of the entry that the felons have not only already committed one crime, to wit: burglary, but are about to commit another, to wit: theft, both with force and violence. There was force and violence used here in the act of breaking in, and defendant as a reasonable person had a right to assume that the two burglars were armed (although the evidence in this case shows that they were not), and that, if interfered with, they would use further force and violence to consummate the theft they had planned or to make good their escape. Under such circumstances, defendant had a right as a reasonably prudent person to assume, that if he gave any warning he would have to pay for his charity with his own life or to his great bodily harm. *Brooks* v. *Sessagesimo,* 139 Cal. App. 679 [34 Pac. (2d) 766], recently decided, is substantially on all-fours with the instant case, and so holds.

█ Furthermore, aside from the fact that death resulted, there is no evidence that defendant had any intent to kill deceased. In attempting to protect his own property or himself, or both, defendant was not engaged in an *unlawful* act, and it cannot therefore be said that, because the person who was shot died, there was an intent to kill. The only logical intent which can be drawn from the evidence, is an intention on the part of the defendant to prevent the commission of a second felony, the first, to wit: burglary, having already been committed. The time-worn rule of torts is that a person has a right to use all such force as is reasonably necessary to protect his person or property. (Bigelow on Torts, 8th ed., p. 153.) If the wound inflicted on the deceased in the instant case had been slight, could it have been said that more than reasonable force was used? Because defendant shooting in the dark inflicted a fatal wound instead of a superficial one, is he to be penalized for his lack of marksmanship, of which he may have had none to start with, or conceding that he was more than an average marksman, is he then to be penalized for his inability to use such skill in the darkness and under circumstances conducive to great mental and physical excitement? We think not.

The judgment in favor of respondent is reversed, and since there is no conflict in the evidence, the trial court is directed to enter judgment for defendant and appellant.

Houser, Acting P. J., and York, J., concurred.