[No. C009964. Third Dist. May 21, 1991.]

GERALD R. GILMORE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ALICE M. SCHMIDT, Real Party in Interest.

## COUNSEL

Greve, Clifford, Diepenbrock & Paras, Edward T. Clifford and William L. Baker for Petitioner.

No appearance for Respondent.

Gary G. Johnson for Real Party in Interest.

## OPINION

**PUGLIA, P. J.**—Petitioner (defendant) seeks a writ of mandate directing respondent superior court to grant his motion for summary judgment. The underlying wrongful death action was brought by real party in interest (plaintiff) after defendant shot and killed her son, Ronald Schmidt. The premise of defendant's summary judgment motion was, inter alia, that pursuant to Penal Code section 197, subdivision 4, the homicide was justifiable as a matter of law, and that in such circumstances there is no liability in tort. We agree with defendant that the superior court's finding the homicide was justifiable under the Penal Code standard precludes tort liability. Accordingly, we shall issue the writ.

■ We note at the outset that plaintiff did not file pleadings or exhibits in opposition to the motion in superior court, did not appear at the hearing on the motion, did not file a preliminary opposition to the petition in this court, and, when notified pursuant to *Palma* v. *U. S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], that we were considering issuing a peremptory writ in the first instance, did not take advantage of our invitation to file opposition.

As a result, we take as undisputed the facts set forth in defendant's summary judgment motion and supporting documents. (See *Bispo* v. *Burton* (1978) 82 Cal.App.3d 824, 832 [147 Cal.Rptr. 442].) Those facts were established primarily in defendant's deposition testimony, the pertinent portions of which were attached as an exhibit to his summary judgment motion.

Defendant also requested the superior court to take judicial notice of an opinion by this court, in which we reversed defendant's conviction for manslaughter in the death of Ronald Schmidt because the undisputed evidence showed a justifiable homicide as a matter of law under Penal Code section 197, subdivision 4.[1] (*People* v. *Gilmore*, (C002608), filed Aug. 4, 1988; review den. and Reporter of Decisions ordered not to publish, Oct. 27, 1988.) ■ It appears that the superior court took notice not only of the existence of that opinion and the result reached, but also relied upon our statement of the facts surrounding the homicide to establish the truth thereof. While an appellate opinion may be judicially noticed for the first purpose, it would ordinarily be error to use it for the latter purpose. (Evid. Code, § 452, subd. (d), and see *People* v. *Tolbert* (1986) 176 Cal.App.3d 685, 690 [222

---

[1]Penal Code section 197, provides: "Homicide is also justifiable when committed by any person in any of the following cases: . . . [¶] 4 When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

Cal.Rptr. 313]; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 47.2, at pp. 1757-1759.) However, the error does not affect the outcome of this proceeding for two reasons. First, there is no material difference between defendant's account of the incident in his deposition testimony and our statement of facts in the opinion in the criminal matter. Second, and more importantly, plaintiff's failure to object to the admissibility of the opinion to establish the truth of its recited facts constitutes a waiver of any error, and the trial court was, as a result, authorized to rely on the opinion in making its ruling. (Code Civ. Proc., § 437c, subds. (b), (c); 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, §§ 289, 302, at pp. 588, 597-598.)

The circumstances surrounding Schmidt's death may be briefly summarized. At approximately 2 a.m. on July 5, 1986, defendant was awakened by sounds outside his second story living room window. He went to the window, which was partially open, and pulled back a curtain. He found himself confronting a man, later determined to be Schmidt, standing on a ladder and attempting to remove the window screen. Defendant went to his bedroom, obtained a gun and then ran downstairs and out the front door. He went to the ladder and pulled it down, knocking Schmidt to the ground. Schmidt regained his feet, moved toward defendant and then backed away. Defendant ordered him to "freeze" and fired two shots in front of and to the right of Schmidt. Schmidt ran away from defendant. Defendant continued to yell "freeze" and fired four more shots to Schmidt's side, hoping to frighten him into stopping. Fragments of one of the bullets, though not aimed at Schmidt, struck and killed him when the bullet ricocheted off the asphalt surface.

Defendant moved for summary judgment on two alternative grounds: (1) that this court's holding in the criminal case that the killing was justifiable as a matter of law under Penal Code section 197 collaterally estops plaintiff in her civil action for damages; and (2) that independent of the criminal case, the facts adduced in support of his motion establish as a matter of law a justifiable homicide for which there is no civil liability. Defendant also sought summary adjudication of two issues: (1) that plaintiff is estopped by our decision in the criminal case from relitigating the issue of justifiability, and (2) that defendant committed justifiable homicide. The superior court denied the motion for summary judgment and for summary adjudication of the estoppel issue, but granted the motion for summary adjudication as to the request for a ruling that the killing was justifiable.

Defendant now contends he is entitled to summary judgment because no action for wrongful death can be premised on a homicide which was justifiable as a matter of law, and because the judgment exonerating him of

criminal responsibility collaterally estops plaintiff in her civil claim for damages based on the same act.

■ We agree with plaintiff's first contention. We reach that result in reliance on long-standing precedent applying Penal Code section 197 in the context of civil proceedings. In *Nakashima* v. *Takase* (1935) 8 Cal.App.2d 35 [46 P.2d 1020], the defendant shot and killed a burglar who had broken into his cafe and was in the process of committing a theft. (*Id.* at pp. 36-37.) In a wrongful death action by the burglar's heirs, the trial court found that the killing was justifiable under Penal Code section 197, subdivision 2. The appellate court upheld that finding and ordered judgment entered for defendant, holding that such finding was "sufficient . . . to exonerate defendant from any civil or criminal liability." (*Id.* at p. 38.) A similar result was reached in *Brooks* v. *Sessagesimo* (1934) 139 Cal.App. 679 [34 P.2d 766], which the *Nakashima* court cited. In *Brooks*, a wrongful death action was brought by the heirs of a burglar who was killed in the act of burglary. The *Brooks* court held that the trial court correctly entered judgment for the defendant where the facts established that the shooting was justifiable under Penal Code section 197. (*Id.* pp. 679-681.)

The *Nakashima* and *Brooks* opinions do not articulate the rationale underlying their conclusions that there is no civil liability for a justifiable homicide. In our view, the rule is simply a recognition that an act resulting in justifiable homicide as defined by Penal Code section 197 is, in legal effect, a privileged act. A privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability. (Rest.2d Torts, §§ 10, 890; 5 Witkin, Summary of Cal. Law (9th ed. 1988) § 278, p. 360; Prosser & Keeton, The Law of Torts (5th ed. 1984) § 16, pp. 108-109.) Indeed, the Penal Code's characterization of certain acts, otherwise unlawful, as "justifiable" is simply the application of a common law label to conduct modernly described as privileged. (Prosser & Keeton, *op. cit. supra.*) Thus, as Witkin points out, the holding in *Nakashima* v. *Takase, supra,* 8 Cal.App.2d 35, is based on the fact that the shooting of the victim in that case "was both a justifiable homicide under P.C. 197 and a privileged battery." (5 Witkin, Summary of Cal. Law, *op. cit. supra,* § 371, p. 457.)

When the correlation between justifiability and privilege is acknowledged, it inevitably follows that plaintiff's cause of action cannot be sustained. The underlying action is one for wrongful death, which is simply the statutorily created right of an heir to recover for damages resulting from a tortious act which results in the decedent's death. (Code Civ. Proc., § 377; *Moxon* v. *County of Kern* (1965) 233 Cal.App.2d 393, 398-399 [43 Cal.Rptr. 481].) There are two counts in the complaint. One is designated

"General Negligence" and the other "Intentional Tort." Under either theory, a finding that defendant's act was justifiable, and therefore privileged, is fatal to plaintiff's claim.

A privileged act is by definition one for which the actor is absolved of any tort liability, whether premised on the theory of negligence or of intent. (Rest.2d Torts, § 10; 5 Witkin, Summary of Cal. Law, *op. cit. supra*, § 278, p. 360, and see *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 10 [236 Cal.Rptr. 181].) Indeed, the Restatement treats privilege as a defense to tort liability generally, dealing with that topic in division 12, entitled "Defenses Applicable to All Tort Claims," at Chapter 45, subtitled "Justification and Excuse." (Rest.2d Torts, § 890.) Thus, if defendant's conduct was privileged, both counts of the complaint are barred.

Neither *Nakashima* nor *Brooks* has been rejected or criticized in the more than 50 years since they were decided. Indeed, the applicability of the justifiable homicide provisions of the Penal Code to a civil proceeding has not again been squarely considered during that period.

The issue was considered in *Peterson* v. *City of Long Beach* (1979) 24 Cal.3d. 238 [155 Cal.Rptr. 360, 594 P.2d 477], but in a context in which it was only tangentially presented. *Peterson* was a wrongful death action brought by the parents of a man who had been shot and killed by a police officer in the mistaken belief that he was a felon fleeing the scene of a burglary. (*Id.* at p. 241.) The trial court entered judgment for the defendants on the ground that the officer's use of deadly force was justifiable under the provision applicable to homicides committed by police officers, Penal Code section 196, the analogue of Penal Code section 197 applicable to private citizens.[2] The Supreme Court reversed because a rebuttable presumption of negligence arose from the fact that the officer fired his weapon in a manner which violated a police department regulation (Evid. Code, § 669, subd. (a)), and the trial court did not apply the criteria set forth in Evidence Code section 669, subdivision (b)(1) to consider whether that presumption had been rebutted. One of those criteria is a desire to comply with the law, in that case, the department regulation. In a footnote the court explained that even if section 196 was applicable under the facts, it did not "compel" the use of deadly force, and therefore "a desire to comply with that section could not rebut the presumption of negligence raised by a violation of" the department regulation. (24 Cal.3d at p. 247, fn. 8.) In the same footnote, the court declined to consider a contention of amici curiae that section 196 provides a

---

[2]Penal Code section 196 provides in part: "Homicide is justifiable when committed by public officers . . . when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest."

defense to criminal liability only, thereby leaving intact the *Nakashima* and *Brooks* holdings.

*Peterson* is distinguishable in that the liability of the officer there turned on the effect of his violation of a department regulation imposing a more stringent standard of conduct than imposed by Penal Code section 196. In this proceeding, however, the defendant's conduct is measured by the standard set up in Penal Code section 197. Thus, this proceeding is controlled by *Nakashima* and *Brooks*, which stand for the rule that if, in a particular case, the facts establish a justifiable homicide under the Penal Code, there is no civil liability. Here, in response to defendant's request for summary adjudication, the trial court found the homicide was justifiable. That ruling is not challenged, and in light of it, defendant is entitled to judgment in this wrongful death action.

In so holding, we do not reach the question whether the use of deadly force is privileged as a matter of law in all cases of first degree burglary. Penal Code section 459 covers a wide range of conduct, much of which would not have constituted burglary at common law. (See *People* v. *Ceballos* (1974) 12 Cal.3d 470, 479, fn. 2 [116 Cal.Rptr. 233, 526 P.2d 241].) As the Supreme Court pointed out in *Ceballos*, the common law sanctioned the use of deadly force only in situations where the felony being committed could be characterized as "forcible and atrocious." (*Id.* at p. 478.) Where the offense is burglary, this standard is satisfied where the circumstances of the particular case establish that the perpetrator's conduct "threatened, or was reasonably believed to threaten, death or serious bodily harm." (*Id.* at p. 479.)

Here, the undisputed facts establish that defendant did in fact entertain the belief that he was so threatened and that his belief was reasonable. At his deposition, defendant testified that he was asleep at 2 a.m. when he heard a scraping or clink at this bedroom window. When he looked out and saw Schmidt on the ladder, he was "absolutely frantic." His initial intent was to keep the intruder outside of his house, and he sought to accomplish this by grabbing his gun and making an arrest. According to defendant, "That's all that was on my mind. Get outside and arrest him. Stop him from coming into my apartment." In his statement of undisputed facts, defendant further asserts that the intruder was "attempting to remove the screen," and that he was "afraid for his life." In our view this unchallenged evidence is sufficient to establish that defendant reasonably believed he was threatened with death or serious injury.

Given our resolution of the case on this basis, we need not address defendant's alternative contention that plaintiff is collaterally estopped to

relitigate the issue of justifiability. We do observe, however, that collaterally estopping a stranger to a criminal prosecution in a civil action against the acquitted criminal defendant would require a break with long-standing authority. (See 7 Witkin, Cal. Procedure, *op. cit. supra*, Judgment, §§ 234, 298, at pp. 671-672, 737.)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying defendant's motion for summary judgment, and to enter a new order granting that motion. Upon finality of this decision, the stay previously issued is vacated.

Sparks, J., and Sims, J., concurred.