Filed 2/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CALEB JAMES HARRIS,<br><br>    Defendant and Appellant. | B300410<br><br>(Los Angeles County<br>Super. Ct. No. YA023031-02) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura C. Ellison, Judge.  Reversed and remanded with directions.

Center for Juvenile Law and Policy, Loyola Law School and Sean K. Kennedy for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

After two mistrials a jury in January 1997 found Caleb James Harris guilty on two counts of first degree murder (Pen. Code, § 187, subd. (a))[1] and one count of arson (§ 451, subd. (a)); found true special circumstance allegations the murders had been committed while Harris was engaged in the crime of arson (§ 190.2, subd. (a)(17)) and by means of a destructive device (§ 190.2, subd. (a)(6)); and also found true the multiple-murder special-circumstance allegation (§ 190.2, subd. (a)(3)). Harris, who was 17 years old at the time of his arrest, was sentenced to concurrent indeterminate terms of 25 years to life for the murders plus a consecutive term of seven years for arson. We affirmed the judgment on appeal. (*People v. Harris* (Dec. 17, 1998, B118894) [nonpub. opn.].)

On February 13, 2019 Harris, represented by counsel, petitioned for resentencing pursuant to newly enacted section 1170.95. After receiving a response from the prosecutor and a reply from Harris's counsel and hearing argument, the superior court denied the petition. On appeal Harris advances three primary arguments: The court improperly engaged in factfinding without issuing an order to show cause and holding an evidentiary hearing; the jury's arson-murder special-circumstance finding does not necessarily preclude relief in light of the Supreme Court's subsequent clarification in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) of the requirements for finding a felony-murder special-circumstance allegation true; and the record of conviction in this case does not establish his ineligibility for resentencing as a matter of law. We agree, reverse the superior

---

[1]    Statutory references are to this code.

2

court's ruling and remand the matter with directions to issue an order to show cause and to proceed consistently with section 1170.95, subdivision (d).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Harris's Murder Convictions*

a. *The firebombing*

Valerie Rivers confronted Dwayne Moore on January 28, 1995 about an incident in her apartment two days earlier when Rivers, in labor, was waiting for her mother to take her to the hospital. As they argued on the street outside Rivers's apartment building, Damone Dellano, Rivers's boyfriend, joined them and pointed a gun at Moore. Moore began to cry and asked Rivers, "You gonna let him do this to me?" Dellano put down the gun and went back into the apartment with Rivers.

Later that afternoon Moore went to the apartment where Eric Bowden was staying; Harris was also present. Bowden told detectives he saw Moore and Harris fill beer bottles with gasoline and put cut-up bedsheets into the bottles. Bowden had heard Moore say he was "going to get the dude back," referring to Dellano. During his police interview Bowden said Harris was "pumping up" Moore to get revenge against Dellano. Moore and Harris left the apartment complex around 8:00 p.m. According to a second witness, Ernest Bowman, when Moore and Harris left the apartment complex, they were carrying Molotov cocktails.

Around 8:30 that evening Rivers heard people talking outside her apartment. She recognized Moore's voice. A speaker she could not identify said, "If the home girl is cool and she got kids, then I wouldn't fuck with her. But if she—if she's not, then fuck it. Whatever." Rivers heard Moore respond, "I ain't going out like that. Meet me back here in 30 minutes." Less than

3

30 minutes later, Rivers heard Moore call out, "Valerie," followed by a "ball of fire" coming through her bedroom window. The firebomb hit Rivers in the face. The bedroom was quickly engulfed in flames.

Robert Alcaraz, Jr. testified he was waiting outside for a friend when he saw two young Black men in dark, loose clothing outside Rivers's apartment lighting a rag and throw an object through the window. Alcaraz saw a flame and heard the sound of breaking glass. The two men ran off. Neither Alcaraz nor the two individuals who were with him identified Harris as one of the two men outside Rivers's apartment building at the time of the firebombing. One of the witnesses identified Moore.

The Hawthorne Fire Department arrived at the scene at approximately 9:15 p.m. The firefighters pulled Rivers, her newborn daughter and her young son from the burning apartment. Rivers suffered severe burns and was hospitalized for two months. Both her young children died from their burns.

Moore and Harris returned together to Bowden's apartment that evening around 10:00 p.m. Harris told Bowden he went over to Rivers's apartment but had not thrown the Molotov cocktails.

b. *Harris's three trials*

Harris and Moore were charged by information in June 1995 with the first degree murder of Rivers's two children, the attempted murder of Rivers and arson causing great bodily injury. The information further alleged as special circumstances that the murders were committed by means of a destructive device, were committed during the commission of arson and constituted multiple murders. At trial Bowden recanted his prior statements implicating Harris. Bowden explained he had simply

4

repeated what the police told him and had lied out of fear because the investigating officer said he was a suspect.  The prosecutor impeached Bowden with his statements to the police.  The first trial ended in a mistrial when the jury was unable to reach a verdict as to either defendant and declared itself hopelessly deadlocked after 10 days of deliberations.

At the retrial Moore was convicted on all four charges.  The second jury was unable to reach a verdict as to any of the charges against Harris, however, and another mistrial was declared as to him.

Bowden was unavailable as a witness for Harris's third trial (as he had been for the second trial); so the People read his testimony from the first trial, including his statements to the police identifying Harris as one of the individuals making the Molotov cocktails.  The jury also heard Bowden's subsequent repudiation of those statements as fabrications.  Bowman testified two individuals had made Molotov cocktails in the laundry room behind the apartment complex and said he saw Moore and Harris carry the Molotov cocktails to a parked van and drive away together.  However, Bowman answered inconsistently to repeated questions whether Harris had been one of the men actually making the Molotov cocktails—stating he was one of the bombmakers on direct examination; but conceding on cross-examination Harris had just been standing in the doorway to the laundry room while two other men made the Molotov cocktails.  After three days of deliberation the jury found Harris not guilty of attempted murder, which the prosecutor acknowledged required proof of intent to kill, but guilty on both counts of first degree murder and of arson causing great bodily

5

injury.  The jury also found true all the charged special circumstances.

### c. *Denial of Harris's new trial motion*

Harris, represented by new counsel, moved for a new trial, challenging the credibility of Bowman's testimony and arguing the evidence was insufficient to prove Harris had aided and abetted either arson or murder.  The motion also asserted Harris's trial counsel, who presented no defense witnesses, provided constitutionally ineffective representation.  The court denied the motion, observing, "I agree with the jury.  I thought [Bowman] was credible.  I have no problem with it.  I had no problem with the decision.  I think it was a proper decision.  I would have had a problem with the case if the jury had based their decision on any kind of finding by innuendo that this defendant intended these babies be killed or injured, or the woman.  But there was nothing in that.  But my conclusion, from what the jury came up with, is that he basically was an aider and abettor, as far as the arson is concerned.  And that testimony came out.  And there was nothing wrong with the verdict."

### d. *The trial court's comments at sentencing*

The prosecutor asked the court to sentence Harris to consecutive state prison terms of life without parole for the murder of the two young children.  The trial court instead sentenced Harris to concurrent indeterminate terms of 25 years to life, plus seven years for the aggravated arson.  Explaining its decision, the court stated, "I've considered the fact that both the jury and I personally feel that the defendant did not intend the happening that did occur.  I know the People tried to show that the defendant may have thrown one of them.  But there's just no evidence of that at all.  I think that, because of the nature of his

6

participation in this matter, that life without possibility of parole would not be the proper sentence."[2]

### 2. *The Section 1170.95 Petition*

Harris, represented by Loyola Law School's Center for Juvenile Law and Policy, petitioned for resentencing pursuant to section 1170.95 on February 13, 2019.  In a declaration Harris averred he had been prosecuted and convicted on two counts of first degree murder under a theory of felony murder and the natural and probable consequences doctrine during his third jury trial.  He further declared he could not now be convicted on either count because he was not the actual killer of the victims, had not aided or assisted the actual killer with the intent to kill, and was neither a major participant in the underlying felony nor had acted with reckless indifference to human life during the course of that felony.

In an accompanying memorandum Harris stated that the prosecutor had proceeded at his third trial primarily on a felony-murder theory, arguing Harris had assisted Moore in making and transporting the firebombs to Rivers's apartment building.  Pointing to the finding he was not guilty of attempted murder, which requires proof of an intent to kill, Harris asserted there was insufficient evidence he was either the actual killer of the

---

[2]     On appeal Harris did not challenge the sufficiency of the evidence to convict him of special-circumstance felony-murder, arguing only that defense counsel had provided ineffective assistance by failing to call several witnesses who had testified at the earlier trials and that the $32,000 restitution fine had been imposed without sufficient notice or adequate factual support and, in any event, should have been subject to a right of offset for payments made by Moore.  We rejected those arguments and affirmed the judgment.  (*People v. Harris*, *supra*, B118894.)

children or had acted with an intent to kill when he assisted Moore. Relying on the Supreme Court's analysis in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, and emphasizing he was a juvenile at the time of the firebombing, Harris also argued that under the current requirements for proof of a felony-murder special-circumstance allegation, he had not been a major participant in the arson and had not acted with a reckless indifference to human life.

The District Attorney filed a response to Harris's petition, contending the resentencing provisions in section 1170.95 are unconstitutional—an argument not repeated by the Attorney General on appeal—and, in any event, Harris was ineligible for relief because he could still be convicted under current law of first or second degree murder. The opposition memorandum analyzed the evidence of Harris's involvement in the crimes under the factors identified in *Banks* and *Clark*. Our opinion affirming Harris's convictions was attached as an exhibit to the District Attorney's response.

Harris filed a reply to the District Attorney's opposition memorandum, which addressed both the constitutional issues and the argument he was a major participant who had acted with reckless indifference to human life under *Banks* and *Clark*.

3. *The Trial Court's Ruling*

The trial court denied Harris's petition after hearing argument from counsel at a hearing on August 1, 2019, ruling, "[T]he facts show that Mr. Harris was a major participant and acting with reckless disregard and did act with implied malice."[3]

---

[3] Judge William R. Hollingsworth, Jr., who presided at Harris's third trial, retired a number of years before Harris filed

8

Explaining its ruling, the court stated, "The facts show that Mr. Harris participated with Mr. Moore in filling beer bottles with gasoline, cutting-up bed sheets, and putting them into bottles with the stated purpose of going to the apartment, and getting back or getting somebody named Dellano back, that is Ms. Rivers's boyfriend, or was Ms. Rivers's boyfriend at the time.

"The facts indicate that Mr. Harris was pumping Moore up, which was his co-defendant, and telling him he should get him back for what he had done. The facts indicate that Mr. Harris, along with Mr. Moore, went to an apartment, and changed into dark clothing, and that the two left together.

"The testimony was given also that Harris had told Bo[w]den that he had gone over to the apartment in question. He also said he did not throw the Molotov cocktails. And again, the People are not suggesting that the record indicates that it was Mr. Harris who actually threw the Molotov cocktails. From the testimony, he not only prepared the incendiary devices, he did so with the intent to hurt somebody, to get somebody back. That he went to the location where the cocktails, Molotov cocktails were thrown into an apartment, and as we all know the end of the result of that was two young children were killed. The mother was severely injured.

"As a result of that testimony, the jury did find him guilty of the crime of arson. He was found guilty of preparing whatever incendiary devices were needed to do the arson. He was found guilty of murder of the two children. There was more than

his petition under section 1170.95. Judge Laura C. Ellison ruled on the petition.

9

sufficient evidence to find that he was an aider and abettor. So I am going to deny his request to be resentenced."[4]

## CONTENTIONS

The Attorney General concedes the superior court erred to the extent it engaged in factfinding rather than evaluating the record of conviction solely to determine whether it established Harris's ineligibility for relief under section 1170.95 as a matter of law.[5] However, the Attorney General contends the court correctly ruled Harris ineligible as a matter of law based on the jury's felony-murder special-circumstance finding. Harris argues a pre-*Banks/Clark* felony-murder special-circumstance finding does not necessarily preclude relief; the superior court improperly relied on the factual summary in this court's opinion affirming Harris's conviction; and evidentiary conflicts at trial, as well as the trial court's findings at Harris's sentencing hearing, were sufficient to require the superior court to issue an order to show cause under section 1170.95, subdivision (c).

## DISCUSSION

1. *Senate Bill No. 1437 and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437), effective January 1, 2019, eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020)

---

[4] The superior court did not address the District Attorney's constitutional arguments.

[5] In light of this concession the Attorney General does not argue Harris was ineligible for relief based on the superior court's finding he had acted with implied malice.

10

10 Cal.5th 830, 842-843 (*Gentile*))[6] and significantly limited the felony-murder exception to the malice requirement for murder. (See, e.g., *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 236; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1081.)[7]

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Gentile, supra,* 10 Cal.5th at p. 859.) The petition must include a declaration by the petitioner

---

[6] New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." By requiring proof of malice except in cases of felony murder, Senate Bill 1437 thus eliminated natural and probable consequences liability for murder "regardless of degree." (*Gentile, supra,* 10 Cal.5th at pp. 848, 851.)

[7] New section 189, subdivision (e)—the exception to section 188, subdivision (a)(3)'s malice requirement for murder—permits a murder conviction for a death that occurred during the commission of certain serious felonies, absent proof of malice, when other specified circumstances relating to the defendant's individual culpability have been proved: The person was the actual killer; the person was not the actual killer, but, with the intent to kill, aided or abetted the actual killer in the commission of first degree murder; or the person was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

11

that he or she is eligible for relief under section 1170.95 and a statement whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(1); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 326-327 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

If the petition contains all required information, section 1170.95, subdivision (c), prescribes a process for the court to determine whether an order to show cause should issue: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The exact nature of this procedure is the focus of disagreement between *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted March 18, 2020, S260598, *Verdugo*, *supra*, 44 Cal.App.5th 320, review granted, and the many subsequent cases that have agreed with their interpretation of section 1170.95, subdivision (c),[8] on the one hand, and *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted November 10, 2020, S264684, on the other.

---

[8] See, e.g., *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, review granted September 23, 2020, S263939; *People v. Drayton* (2020) 47 Cal.App.5th 965, 975; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June 24, 2020, S262011.

In *Verdugo* we held subdivision (c) prescribes a two-step process for the court to determine if an order to show cause should issue, "one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo, supra,* 44 Cal.App.5th at p. 328, review granted.)

As to the first step, we explained, "[B]ecause a petitioner is not eligible for relief under section 1170.95 unless he or she was convicted of first or second degree murder based on a charging document that permitted the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine (§ 1170.95, subd. (a)(1), (2)), the court must at least examine the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment. Based on a threshold review of these documents, the court can dismiss any petition filed by an individual who was not actually convicted of first or second degree murder. The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189." (*Verdugo, supra,* 44 Cal.App.5th at pp. 329-330, review granted.) A petitioner is entitled to appointment of counsel, we held, only if the superior court does not determine he or she is ineligible for relief as a matter of law at this first subdivision (c)

13

prima facie review. (*Verdugo*, at p. 332; accord, *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1140, review granted.)

The court in *People v. Cooper*, *supra*, 54 Cal.App.5th 106, review granted, disagreed that section 1170.95, subdivision (c), contemplates two separate steps and held a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be appointed. (*Cooper*, at p. 123.) In the *Cooper* court's view, section 1170.95, subdivision (c)'s first sentence is simply "a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences . . . specify the procedure in undertaking that task," meaning there is only one prima facie review before an order to show cause issues. (*Cooper*, at p. 118.) Thus, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any review under section 1170.95, subdivision (c). (*Cooper*, at p. 123.)

We do not find persuasive the *Cooper* court's interpretation of section 1170.95, subdivision (c). Unless we receive different instructions from the Supreme Court, we adhere to the analysis set forth in *Verdugo* and the cases that have followed it.[9]

Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any

---

[9]    The Supreme Court will likely resolve this disagreement in *People v. Lewis*, S260598, in which briefing and argument have been limited to the following issues: "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?"

remaining counts.  (§ 1170.95, subd. (d)(1); see *Verdugo, supra*, 44 Cal.App.5th at p. 327, review granted.)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *People v. Rodriguez, supra*, 58 Cal.App.5th at p. 230; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309 [prosecutor must only prove a reasonable jury could find the defendant guilty of murder with the requisite mental state; "[t]his is essentially identical to the standard of substantial evidence"].)[10]  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis, supra*, 43 Cal.App.5th at p. 1136, review granted.)

---

[10]     In granting review in *People v. Duke*, S265309, the Supreme Court limited the issue to be briefed and argued to the following:  "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under . . . section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under . . . sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

15

2.  *The Superior Court Properly Considered This Court's Prior Opinion Affirming Harris's Convictions*

This court in *Verdugo*, *supra*, 44 Cal.App.5th at page 333, review granted, explained, "A court of appeal opinion, whether or not published is part of the appellant's record of conviction" and held it was proper for the superior court to consider the information in an opinion affirming the petitioner's murder conviction on direct appeal "in determining whether he had made a prima facie showing of eligibility for relief under section 1170.95 or whether he was ineligible for relief as a matter of law." (Accord, *People v. Bascomb*, *supra*, 55 Cal.App.5th at p. 1081; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939; *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1136, fn. 7, review granted; see *People v. Woodell* (1998) 17 Cal.4th 448, 455 [appellate court record, including the appellate opinion, properly considered part of the record of conviction to establish the basis for an out-of-state felony conviction and determine if it qualified as a strike under California law].)

Harris's citation to *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416 to argue factual statements in an appellate opinion are inadmissible hearsay and not properly considered in determining eligibility for relief under section 1170.95 is misplaced.  Evaluating the evidence before the trial court on a summary judgment motion, the court of appeal in *Gilmore* held only that the description of events in an appellate opinion from a criminal case is inadmissible hearsay in a civil action for wrongful death.  (*Id.* at p. 418.)  In postconviction proceedings, however, statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial.

16

(See, e.g., *People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661 [proper to rely on prior appellate opinion when ruling on section 1170.126 resentencing petition]; see also *People v. Saelee* (2018) 28 Cal.App.5th 744, 756 [reliable hearsay may be considered in deciding Proposition 64 petition to recall felony sentence for a marijuana conviction and to resentence as a misdemeanor]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1094-1095 [reliable hearsay may be considered at eligibility hearing under Proposition 47].)  The rules of evidence governing section 1170.95 proceedings "should be no different than those applied at other analogous postconviction resentencing proceedings."  (*People v. Williams* (2020) 57 Cal.App.5th 652, 661, petn. for review pending, petn. filed Dec. 23, 2020.)

   3.  *Harris May Challenge the Special Circumstance Finding in a Section 1170.95 Petition*

   a.  Banks *and* Clark

Section 189, subdivision (e), which permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved, incorporates in subdivision (e)(3) the same requirements for proving the defendant acted with reckless indifference to human life as a major participant in one of the identified serious felonies as necessary for a felony-murder special-circumstance finding under section 190.2, subdivision (d).[11]  The factors properly considered

---

[11]     Enacted in 1990, section 190.2, subdivision (d), provides that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or

17

in assessing such a felony-murder special-circumstance finding were clarified in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522, nearly two decades after Harris's conviction. (See *In re Scoggins* (2020) 9 Cal.5th 667, 671; *In re Miller* (2017) 14 Cal.App.5th 960, 977-978.)

In *Banks* the Supreme Court identified factors courts should consider in determining whether a defendant was a "major participant" under section 190.2, subdivision (d): "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

In both *Banks* and *Clark* the Court explained that, to determine whether the defendant acted with reckless indifference, courts must "look to whether a defendant has "'knowingly engag[ed] in criminal activities known to carry a grave risk of death.'"" (*Banks*, *supra*, 61 Cal.4th at p. 801.)

persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." (See *People v. Law* (2020) 48 Cal.App.5th 811, 822, review granted July 8, 2020, S262490.)

Specifically, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Ibid.*) As further refined in *Clark*, "reckless indifference" "encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. . . . [R]ecklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*Clark*, *supra*, 63 Cal.4th at p. 617.)

The Supreme Court in *Clark* set out a series of considerations relevant to determining whether a defendant had acted with reckless indifference to human life (with some obvious overlap with the major-participant factors specified in *Banks*). Among others, was the defendant aware that guns would be used; did the defendant himself or herself use a gun; did the defendant have an opportunity to reduce the overall risk of violence during the felony or to aid the victim; did the defendant know his or her cohorts were likely to use lethal force? (*Clark, supra*, 63 Cal.4th at pp. 618-622.) Specifically with respect to the facts before it, the *Clark* Court emphasized, "[W]hile the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance." (*Id*. at p. 618.)[12]

---

[12]	The Supreme Court in *Banks* and *Clark* did not expressly require that juries be instructed on those clarifications. Optional language describing the *Banks*/*Clark* factors was added to the CALCRIM instructions; and the bench notes expressly direct the

19

b. *The jury's pre-*Banks/Clark *felony-murder special-circumstance finding does not preclude relief as a matter of law*

The felony-murder special-circumstance allegations required the jury to find that Harris had acted with reckless indifference to human life and as a major participant in the arson that resulted in the death of Rivers's two children (§ 190.2, subds. (a)(17), (d)). The Attorney General argues the jury's finding precludes relief under section 1170.95 as a matter of law and insists any challenge to the evidentiary support for that finding based on *Banks* and *Clark* had to be made by petition for writ of habeas corpus. Although this position has been upheld in several court of appeal decisions, we reject it, as have other courts, as contrary to the language and intent of section 1170.95.

---

trial court to determine whether the *Banks* and *Clark* factors "need be given." (See CALCRIM No. 703.) Accordingly, it is not necessarily the case that a post-*Banks*/*Clark* jury will have received instructions that differ from those given to a pre-*Banks*/*Clark* jury that made a major participant/reckless indifference finding. Nonetheless, posttrial, appellate and postconviction review of a felony-murder special-circumstance finding after *Banks* and *Clark* must consider the factors, issues and questions posited in those cases. (See, e.g., *In re Scoggins*, *supra*, 9 Cal.5th at p. 671 [habeas petitioner's conduct did not support a finding of reckless indifference to human life under *Banks* and *Clark* notwithstanding affirmance on direct appeal of a pre-*Banks* and *Clark* robbery-murder special-circumstance finding]; *In re Bennett* (2018) 26 Cal.App.5th 1002 [granting habeas relief and vacating robbery-murder special-circumstance finding in light of *Banks* and *Clark*, notwithstanding prior opinion affirming the special circumstance finding].)

20

In *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284, our colleagues in Division One of this court concluded that allowing a petition under section 1170.95 to challenge the evidentiary support for the felony-murder special-circumstance finding would give defendants convicted before *Banks* and *Clark* "an enormous advantage" because "Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to challenge the sufficiency of the evidence of the special circumstances finding on direct appeal, where the People would need only to show that substantial evidence supported that finding. . . . But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt [and] nothing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants." (*Galvan,* at pp. 1142-1143, accord, *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978 ["[b]y requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions"]; *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted Oct. 14, 2020, S264033.)

These decisions misperceive the nature of the section 1170.95 petition, which challenges the murder conviction, not the special circumstance finding. (*People v. York* (2020) 54 Cal.App.5th 250, 260, review granted Nov. 18, 2020, S264954 ["section 1170.95 permits a petitioner to challenge a *murder*

*conviction*. If that challenge succeeds, then under section 1170.95, subdivision (d)(3), the special circumstance is vacated as a collateral consequence"].)

To be sure, section 189, subdivision (e)(3), as amended by Senate Bill 1437, is now "the same as the standard for finding a special circumstance under section 190.2[, subdivision] (d) as the former provision expressly incorporates the latter." (*In re Taylor* (2019) 34 Cal.App.5th 543, 561; accord, *People v. York*, *supra*, 54 Cal.App.5th at p. 258, review granted ["[t]he language of section 189, subdivision (e)(3), as amended by Senate Bill 1437, tracks the language of the special circumstance provision"].) But "[w]hat permits a defendant convicted of felony murder to challenge his or her murder conviction based on the contention that he or she was not a major participant in the underlying felony who acted with reckless indifference to human life, are the changes Senate Bill 1437 made to sections 188 and 189, and in particular the addition of section 189, subdivision (e)(3), not the rulings in *Banks* and *Clark*." (*York*, at p. 261.) Thus, Harris's petition is made possible by the changes made to section 189, not because of the clarifications made in *Banks* and *Clark*. (See § 1170.95, subd. (a)(3) [allowing petition if "the petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019"].)

Similarly, although Harris's jury was instructed that to find true the special circumstance allegation under section 190.2, subdivisions (a)(17) and (d), it had to find he aided and abetted the arson that led to the victims' deaths while acting as a major participant with reckless indifference to human life, the same elements now found in section 189, subdivision (e)(3), that pre-*Banks*/*Clark* finding, without more, does not preclude relief

22

under section 1170.95. (See *In re Scoggins*, *supra*, 9 Cal.5th at pp. 673-674 ["Where a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision. [Citation.] "In such circumstances, it is settled that finality for purposes of appeal is no bar to relief, and that habeas corpus or other appropriate extraordinary remedy will lie to rectify the error'"]; *People v. York*, *supra*, 54 Cal.App.5th at p. 262, review granted ["a pre-*Banks* and *Clark* special circumstance finding—necessarily made on the basis of our former, and significantly different, understanding of what the terms 'major participant' in the underlying felony and 'reckless indifference' to human life meant—does not preclude relief under section 1170.95 as a matter of law"]; *People v. Law*, *supra*, 48 Cal.App.5th at p. 825, review granted ["the trial court erred by concluding the special circumstance finding, on its own, rendered Law ineligible for relief—that is, the court erred by failing to determine whether Law qualified as a major participant who acted with reckless indifference to human life under *Banks* and *Clark*"]; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S26011 [because no court has affirmed the special circumstance findings at issue post-*Banks* and *Clark*, "[t]here is therefore a possibility that Torres was punished for conduct that is not prohibited by section 190.2 as currently understood"]; but see *People v. Nunez* (2020) 57 Cal.App.5th 78, 93, review granted Jan. 13, 2021, S265918 [disagreeing with *York*, *Law* and *Torres*].)

Because the evidence supporting Harris's special circumstance finding has never been reviewed under the

23

standards set forth in *Banks* and *Clark*, the superior court could properly determine he was ineligible for relief as a matter of law only after reviewing the available record of conviction in light of the *Banks* and *Clark* factors.  (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 330, review granted ["[t]he record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189"]; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"].)  In making that determination—that is, in evaluating whether a petitioner has made a prima facie showing he or she is entitled to relief—the superior court cannot engage in factfinding.  As the court of appeal explained in *People v. Drayton*, *supra*, 47 Cal.App.5th at page 980, "The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing.  Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.'  [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subdivision (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining

24

whether the petitioner showed reckless indifference to human life in the commission of the crime)." (Accord, *People v. Perez* (2020) 54 Cal.App.5th 896, 903-904, review granted Dec. 9, 2020, S265254; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165-1166.)

4. *Harris Is Not Ineligible for Relief as a Matter of Law*

The superior court did not deny Harris's petition based solely on the jury's true finding on the felony-murder special-circumstance allegation—the argument advanced by the Attorney General, which we reject. Rather, the court, citing to evidence in the record including portions of the factual statement from our opinion on Harris's direct appeal, ruled "the facts show" that Harris was a major participant in the arson who had acted with reckless disregard for human life. Yet some of the facts made particularly significant by the Supreme Court's decisions in *Banks* and *Clark* were disputed at trial and not clearly resolved by the jury's finding.

Our opinion stated that Bowden saw Harris, as well as Moore, fill bottles with gasoline and put torn pieces of bedsheet into the bottles and that Bowden heard Harris "pumping Moore up," telling him he should get Dellano back for what he had done.[13] At trial, however, Bowden recanted, claiming his

_____

[13]     Although, as discussed, the appellate opinion is part of the record of conviction and factual statements in the opinion are admissible in section 1170.95 proceedings as "reliable hearsay," factual statements that are inconsistent with the evidence at trial—like any other form of evidence—are not preclusive. (See *People v. Woodell*, *supra*, 17 Cal.4th at p. 457 [facts recited in an opinion on direct appeal are admissible and "probative" in a posttrial proceeding; "[i]f the appellate court did state the pertinent facts, a trier of fact is entitled to find that those

25

description of Harris's involvement was false.  In addition, Moore in his testimony at the first trial, read at Harris's third trial, denied that Harris had encouraged him to seek revenge.  For his part, Bowman was at most equivocal whether Harris had participated in making the firebombs or had simply been a passive observer, who then helped Moore transport the firebombs to Rivers's apartment complex.  And neither Alcaraz nor the other individuals who witnessed the firebombing identified Harris as one of the two men they saw lighting rags and throwing objects through Rivers's apartment window.  Indeed, the court at Harris's sentencing hearing stated there was no evidence Harris had thrown any of the firebombs and it did not appear he intended the devices to hurt, let alone kill, anyone.  Nor was there evidence Harris was physically present when Moore hurled the firebombs through Rivers's bedroom window, rather than waiting for him in the van they had driven to the apartment complex.

Harris unquestionably aided and abetted the arson that killed Rivers's two young children, making him guilty of felony murder as defined at the time.  Prior to *Banks* and *Clark*, even the most benign of these depictions of Harris's involvement in facilitating the crime would also have been sufficient for a felony-murder special-circumstance finding.  However, as explained in

statements accurately reflect the trial record.  Moreover, the defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion"]; see also *People v. Clements* (Feb. 4, 2021, E073965) __ Cal.App.5th ___ [2021 Cal.App. Lexis 98, [*22]] [citing *Woodell* as authority for admissibility and probative value of facts stated in an opinion on direct appeal in a section 1170.95 evidentiary hearing].)

*Banks*, *supra*, 61 Cal.4th at page 802, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor," to constitute major participation. Here, Harris's role "in planning the criminal enterprise that led to one or more deaths" (*Banks*, at p. 803) appears to have been nonexistent, even if the evidence that he encouraged Moore to seek revenge is credited. Similarly, Harris's role in making the Molotov cocktails—"supplying [the] lethal weapons"—was disputed; and, as discussed, there was no evidence he actually used them. (*Ibid.*) Moreover, given Harris's youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development (see, e.g., *Graham v. Florida* (2010) 560 U.S. 48; *Miller v. Alabama* (2012) 567 U.S. 460; *People v. Gutierrez* (2014) 58 Cal.4th 1354), it is far from clear that Harris was actually aware "of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants." (*Banks*, at p. 803.) On the other hand, several of the *Banks* factors clearly point toward Harris as a major participant in the arson. Even if not present in front of Rivers's apartment building, he was near the scene and in a position to prevent the actual murders; his own actions, at least carrying the firebombs to the van and perhaps encouraging Moore's planned retribution, certainly played a role in the deaths of the victims; and he apparently fled with Moore after the fire started. (*Ibid.*) Thus, determining whether Harris could now be found to have been a major participant within the meaning of section 189, subdivision (e)(3), requires factfinding following an evidentiary hearing pursuant to section 1170.95, subdivision (d).

27

Similarly, although Harris's jury was instructed reckless indifference to human life requires proof the defendant was aware his acts "involved a grave risk of death to an innocent human being,"[14] the Supreme Court in *Clark*, *supra*, 63 Cal.4th at page 617, clarified reckless indifference encompasses a willingness to assist another in killing to achieve a particular goal, even if the victim's death was not specifically intended. "This definition encompasses both subjective and objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her. But recklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.'" (*Ibid*.)

---

[14] CALJIC No. 8.80.1, as given at Harris's trial, instructed that the felony-murder special circumstance could be found true as to a defendant who was not the actual killer and did not act with an intent to kill only if the defendant "with reckless indifference to human life and, as a major participant, aided [or] abetted . . . in the commission of the crime of arson which resulted in the death of a human being." The written version of the instruction explained, "A defendant acts with reckless indifference to human life when the defendant knows or is aware that his acts involved a grave risk of death to an innocent human being." However, when giving the instruction, the trial court said, "A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involved a danger of risk of death to an innocent human being." Neither the written nor oral version of the instruction defined "major participant."

28

Objectively, firebombing the apartment of a family with two young children at 9:00 p.m. creates a high risk that someone may be killed.  However, Harris's subjective willingness to assist an act of revenge that he understood involved such a grave risk is not established as a matter of law by the record of conviction. Again, factfinding following an evidentiary hearing is necessary to determine whether Harris could be convicted of felony murder under the current version of section 189, subdivision (e), and, therefore, is ineligible for relief under section 1170.95.[15]

## DISPOSITION

The order denying Harris's section 1170.95 petition is reversed, and the matter remanded with directions to issue an order to show cause and to proceed consistently with section 1170.95, subdivision (d).


PERLUSS, P. J.

We concur:



SEGAL, J.              FEUER, J.

---

[15] The superior court did not consider, and the Attorney General does not argue on appeal, the significance, if any, of the jury's true findings that the murders had been committed by means of a destructive device pursuant to section 190.2, subdivision (a)(6).

29