Filed 6/29/21  P. v. Ramirez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B305683 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA030448) |
| v. | |
| MONIQUIE RAMIREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda Lopez and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

The superior court denied Moniquie Ramirez's petition for resentencing pursuant to Penal Code section 1170.95[1] after an evidentiary hearing, finding she could still be convicted of murder notwithstanding the changes to accomplice liability for murder effected by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). On appeal Ramirez argues it is unclear whether the court applied the correct standard of proof (that is, that the People must prove every element of liability for murder under the amended statutes beyond a reasonable doubt, as this court held in *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230 (*Rodriguez*), review granted March 10, 2021, S266652, and the court impermissibly accepted as evidence of her continued culpability the summary of trial evidence in our opinion affirming her convictions for second degree murder and attempted murder (*People v. Ramirez* (July 23, 1997, B104850) [nonpub. opn.]).

Neither argument has merit. As to the first, both the prosecutor and Ramirez's counsel in the superior court clearly stated it was the People's burden to prove beyond a reasonable doubt that Ramirez could now be convicted of murder. The record reflects the superior court understood and applied that standard. As to the second, section 1170.95, subdivision (d)(3), expressly provides the parties may rely on the record of conviction at the hearing to determine whether the petitioner is entitled to relief. As we have held in a number of cases (see, e.g., *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*), review granted Apr. 28, 2021, S267802; *People v. Verdugo* (2020)

---

[1]     Statutory references are to this code.

2

44 Cal.App.5th 320, 330 (*Verdugo*), review granted Mar. 18, 2020, S260493), the opinion on a petitioner's direct appeal is part of the record of conviction, and it is entirely proper for the superior court to consider as reliable hearsay in section 1170.95 proceedings statements of fact contained in that opinion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Ramirez's Trial, Conviction and Appeal*

Ramirez was charged in an information filed May 2, 1995 with the murder of Daniel Legarreta (§ 187, subd. (a)) with a special allegation the murder had been committed while Ramirez was engaged in an attempted robbery within the meaning of section 190.2, subdivision (a)(17); the attempted willful, deliberate and premeditated murder of David Legarreta (§§ 664, 187, subd. (a)); and attempted first degree robbery (§§ 664, 211). The information further alleged a principal had been armed during the commission of all three offenses (§ 12022, subd. (a)).

a. *The evidence at trial*

As summarized in our opinion affirming Ramirez's convictions for second degree murder and attempted murder (*People v. Ramirez*, *supra*, B104850), Ramirez had been selling small amounts of methamphetamine to Daniel Legarreta and his 17-year-old son, David Legarreta, for several months. In early January 1995 Daniel and Ramirez had a dispute during which Daniel took Ramirez's cell phone. (The prosecutor's version was it was taken by Daniel as collateral for a debt; the defense contended Daniel seized the phone, intending to sell it even though Ramirez did not want him to.) Daniel told David that Ramirez had threatened to shoot him if he did not return the device.

3

At approximately 6:00 p.m. on January 8, 1995 David called Ramirez and asked her to come over to sell the Legarretas drugs. Two hours later David responded to a knock and opened the door to Ramirez, her boyfriend and four men he did not know. One of the strangers pointed a gun at David's head. The gun looked similar to one that Ramirez had brought to the Legarreta house a few days earlier. Ramirez asked where Daniel was, and David went to Daniel's bedroom to tell him Ramirez was there. As David did so, he saw all but one of the group go into the living room, where Ramirez unplugged the stereo and attempted to pull out telephone wires. Meanwhile, the man holding the gun stepped into the doorway of David's bedroom, where Daniel's friend, Frederick Williams, was sleeping. The gunman woke Williams, pointed the gun at him and demanded that Williams empty his pockets and turn over his wallet. Williams responded he had no wallet, and the gunman left.

While this was taking place, David told Daniel that Ramirez had arrived and had a gun. Daniel grabbed a shotgun and, holding it, walked into the living room. Ramirez cried out, "He has a gun," and ran out the front door with four of the men. The individual with the gun emerged from David's bedroom at this point, fired at Daniel and then at David, who had gone to help his father. Williams heard eight or nine shots and escaped through a bedroom window. Daniel died from multiple gunshot wounds. The murder weapon was never found.

Testifying in her defense, Ramirez said she, Daniel and David were friends. She sold them drugs, which they used together; and sometimes they went shopping or out to eat. On January 1 or 2, 1995 she and Daniel got into a dispute over her cell phone, which David took from the glove compartment of her

4

car. Daniel said he could sell it for $300. Although she had only paid $50 for the phone and had not yet activated it, Ramirez told Daniel she was not interested. Daniel refused to give it back to her. Ramirez insisted the dispute was not heated, and she never threatened to kill Daniel. Although she had purchased a handgun for protection similar to the one depicted in a photograph introduced during the People's case, Ramirez had last seen it in a drawer in her apartment.

Ramirez related her version of the events on January 8, 1995. David called and said he wanted to buy a small quantity of methamphetamine. He told her he wanted her to come alone. Because he had never before made that request, Ramirez asked why; David said his father had said so. Ramirez was frightened because she knew Daniel had a gun, had seen him angry on many prior occasions and believed he could be exceptionally dangerous. Before Ramirez left for the Legarretas' home, her cousin, two of his friends and a friend of her boyfriend arrived at her apartment where they all drank alcohol and used drugs. Ramirez then asked the men to accompany her to the Legarreta house. There was no conversation about robbing or hurting anyone or committing any crime except selling drugs. Ramirez did not take her gun, and she did not see a gun in the possession of any of her companions. At the Legarreta house only Ramirez, her boyfriend and her cousin went to the front door. When David answered the door, she asked, "Where is your father?" No one put a gun to David's head. David told Ramirez that Daniel was in his bedroom, and she followed him back toward the bedroom. She did not unplug the stereo or attempt to pull out any phone wires, and she saw no one else doing those things.

5

When David reached Daniel's bedroom, he knocked on the door and said, "Moniquie is here. They're here." Daniel came out, pointing his shotgun at her as he loaded it. Ramirez called out, "He has a gun"; and she, her boyfriend and two of her cousin's friends ran out of the house and got into their car. Ramirez said she may have heard one shot after she got outside.

Ramirez's cousin was the last to leave the house. When he got in the car, he told Ramirez he had shot Daniel. Because she was frightened, Ramirez did not ask her cousin about the circumstances of the shooting or where he got the gun. By the time of trial, the cousin and Ramirez's boyfriend had disappeared. Ramirez was unable to locate the friends who accompanied them to the Legarreta house.

As to the murder charge, the court instructed the jury, in part, on express malice (premeditated) murder, felony murder during the commission of an attempted robbery and murder as the natural and probable consequence of attempted robbery or assault with a deadly weapon. As to attempted murder, the court instructed the jury as to attempted willful, deliberate and premeditated murder and attempted murder as the natural and probable consequence of attempted robbery or assault with a deadly weapon.

b. *The verdict and sentencing*

The jury convicted Ramirez of second degree murder and attempted murder, found her not guilty of attempted robbery and rejected the special allegations the attempted murder had been premeditated and a principal had been armed during the commission of the murder and attempted murder. The court sentenced Ramirez to an indeterminate state prison term of

6

15 years to life for murder plus a concurrent life term for attempted murder.

> c. *Our opinion affirming the convictions*

On appeal Ramirez argued, in what this court called a combined challenge, that the verdicts were inconsistent, contrary to law and not supported by substantial evidence. Ramirez contended the jury's finding of second degree murder and rejection of the allegation the attempted murder had been premeditated indicated neither offense had been premeditated. She additionally argued the not guilty finding on attempted robbery precluded a finding of felony murder or murder as a natural and probable consequence of the attempted robbery. Finally, she argued the failure to find true the principal-armed enhancement allegation meant the murder could not have been the natural and probable consequence of an assault with a deadly weapon.

We rejected these arguments, concluding the attempted robbery acquittal was likely the product of jury confusion or leniency. We held there was substantial evidence that, in retaliation for Daniel's confiscation of her cell phone, Ramirez aided and abetted an attempted armed robbery as a natural and probable consequence of which Daniel and David were shot. "Because appellant had previously seen Daniel with a gun, had often seen him angry, and considered him to be 'exceptionally dangerous,' she had to be aware of the great potential for armed resistance to her group's armed invasion of, and attempt to take property from, the Legarreta home. Moreover, it was reasonably foreseeable, and therefore a natural and probable consequence of the robbery, that appellant's armed companion would fire the gun to overcome resistance, to escape capture, out of anger, etc."

7

In addition to challenging the verdicts, Ramirez argued the 15-year-to-life sentence was cruel or unusual punishment in violation of the California Constitution in light of her youth (she was 20 years old at the time of the murder), her lack of a prior adult criminal record and her limited role in the offenses. In rejecting that argument, we noted an armed home-invasion robbery always creates an extremely high risk of violence and, in the circumstances here, there was an even greater potential for violence because Ramirez knew Daniel was a dangerous man. Moreover, we explained, Ramirez's participation was "crucial to the commission of the crime because her status as the Legarretas' friend and drug dealer served as the group's admission ticket to the Legarreta home. Appellant also supplied the motive for the robbery: retaliation for Daniel's refusal to return appellant's cell phone. In addition, appellant may have provided the gun used to intimidate the Legarreta household, kill Daniel, and injure David. David's testimony regarding the group's conduct upon admission to the house, including displaying the gun in a threatening manner, unplugging the stereo, and disconnecting the telephones, belies appellant's contention that there is no indication she intended anything other than 'one of the parties' usual drug transactions.' The behavior of the group indicates that appellant and the remaining members planned to rob the Legarretas and others occupying their home. Moreover, appellant did nothing to aid Daniel when her cousin told her he had shot 'the big one.' Thus, nothing in the nature of the offense supports appellant's disproportionality claim."[2]

---

[2] Although affirming Ramirez's two convictions, we vacated her sentence and remanded the case for resentencing because the trial court had erred in imposing a concurrent indeterminate life

8

2. *Ramirez's Section 1170.95 Petition*

Ramirez, represented by counsel, filed a petition on May 14, 2019 to vacate her second degree murder conviction and for resentencing pursuant to section 1170.95, alleging she had been convicted of second degree murder under a felony-murder theory and could not now be convicted of murder because of the changes made to sections 188 and 189 by Senate Bill 1437. Ramirez's petition specifically alleged she was not the actual killer in the commitment offense, did not aid and abet the actual killer with the intent to kill and was not a major participant and did not act with reckless indifference during the course of the crime.[3]

The People filed an opposition to the petition contending section 1170.95 was unconstitutional, and a supplemental opposition arguing, even if section 1170.95 was valid, Ramirez was not entitled to relief because the record of conviction affirmatively established, beyond a reasonable doubt, that she had been a major participant in the underlying attempted robbery and had acted with reckless indifference to human life. The supplemental opposition attached a copy of our opinion affirming Ramirez's conviction. Ramirez filed a reply brief in support of her petition, which responded to the People's constitutional and statutory arguments. Both the People's

---

term for attempted murder, rather than a determinate term of five, seven or nine years. (§ 664, subd. (a).) On remand the trial court imposed a concurrent seven-year term.

[3] Judge Dewey L. Falcone, who had presided at Ramirez's trial and sentencing hearings, retired from the Los Angeles Superior Court in May 2013. Ramirez's petition was ultimately assigned to Judge Olivia Rosales for hearing and decision.

supplemental opposition and Ramirez's reply memorandum addressed the Supreme Court's clarification in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) of the requirements for a true finding of a felony-murder special-circumstance allegation pursuant to section 190.2, subdivision (d), the standard for felony murder now incorporated in section 189, subdivision (e)(3).

On December 17, 2019 the superior court found that Ramirez had established a prima facie case for relief and scheduled a hearing on an order to show cause for February 26, 2020.

3. *The Hearing on Ramirez's Petition*

At the evidentiary hearing both sides relied on this court's opinion affirming Ramirez's convictions to argue whether Ramirez could now be convicted of felony murder as a major participant in the underlying crimes who had acted with reckless indifference to human life under the standards articulated in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522. At the outset of her argument, Ramirez's counsel (a certified law student actively supervised by an experienced lawyer present in court) emphasized, "As this court knows, section 1170.95 places the same burden on the People they would have if the case was before the court for trial, meaning that this court must find that the defendant could only be found guilty beyond a reasonable doubt."

After hearing argument the court denied the petition, stating, "In reviewing the court record, [the] court of appeal decision, the transcripts of some of the testimony, the briefs filed by both sides and all the points and authorities, I do find that she, beyond a reasonable doubt, is a major participant. I do find

10

that she was the ringleader.  But for her there's no dispute with Daniel.  But for her there's no drug deal.  But for her there's no people coming to Daniel's home.  But for her there are [no] people coming with guns to his home. . . .  But for her, this doesn't happen."

The court continued, "At no point does she seem—is there any testimony, aside from her testimony, that she is startled by all of a sudden the fact that they—because none of the other witnesses say she seems startled until—until the victim shows up with his own shotgun.  That's what they didn't anticipate or at least that's what they realize, he came out with a bigger gun.  But when they go in there, it's orchestrated, it's led by her. . . .  She brings all these other people who are uninvited, unknown to the victims, and it basically creates an explosive atmosphere and which actually ends up in explosion because someone is killed.  So I do find distinguishable from, from *Banks* that this was [done] with recklessness sufficient to find her guilty under this theory and, therefore, relief is denied.  Petition is denied."

Ramirez filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly limiting the felony-murder exception to the malice requirement for murder.  (See, e.g., *Rodriguez, supra,* 58 Cal.App.5th at p. 236, review granted; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1080.)  With respect to the latter

11

change, in its uncodified findings and declarations the Legislature stated, "It is necessary to amend the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *Verdugo, supra*, 44 Cal.App.5th at p. 325, review granted.)[4]

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *People v. Gentile*, *supra*, 10 Cal.5th at p. 859.) If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible

---

[4] To effectuate this purpose, new section 189, subdivision (e), provides with respect to a participant in the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), in which a death occurs (that is, as to those crimes that provide the basis for the charge of first degree felony murder) that an individual is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), prescribes a process for the court to determine whether the petitioner has made a prima facie showing that he or she falls within the provisions of the section and is entitled to relief.

Once the section 1170.95, subdivision (c), prima facie showings have been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3); *Rodriguez, supra*, 58 Cal.App.5th at p. 230, review granted; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123 (*Duke*), review granted Jan. 13, 2021, S265309.) The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *People v. Tarkington* (2020) 49 Cal.App.5th 892, 898-899, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, review granted Mar. 18, 2020, S260598.)

> 2. *The Superior Court Applied the Proper Standard of Proof at the Evidentiary Hearing*

Our colleagues in the Sixth Appellate District in *People v. Lopez, supra*, 56 Cal.App.5th 936, review granted, and this court in *Rodriguez, supra*, 58 Cal.App.5th 227, review granted,[5] held

---

[5] In granting review in both *People v. Lopez*, S265974, and *People v. Rodriguez*, S266652, the Supreme Court ordered further

13

section 1170.95 requires the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law to establish a petitioner's ineligibility for relief under that statute. Once the petitioner has made a prima facie showing of eligibility for relief, we stated, "[I]t is the court's responsibility to act as independent fact finder and determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section 1170.95, subdivision (d)(3)." (*Rodriguez*, at pp. 243-244; accord, *People v. Duchine* (2021) 60 Cal.App.5th 798, 813; *People v. Clements* (2021) 60 Cal.App.5th 597, 615, review granted Apr. 28, 2021, S267624.)

Disagreeing with the contrary view expressed in *Duke*, *supra*, 55 Cal.App.5th 113, review granted, which held the prosecutor must only prove a reasonable jury could find the defendant guilty of murder with the requisite mental state—the substantial evidence standard of proof—we explained that relaxed standard was inconsistent with the Legislature's intent in enacting Senate Bill 1437 to provide retroactive relief for individuals who had been convicted of murder under now-invalid

action deferred pending consideration and disposition of a related issue in *People v. Duke*, S265309. In *People v. Duke*, the Supreme Court limited the issue to be briefed and argued to the following: "Can the People meet their burden of establishing a petitioner's ineligibility for resentencing under . . . section 1170.95, subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under . . . sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"

14

theories of liability.  (*Rodriguez, supra*, 58 Cal.App.5th at pp. 240-241, review granted.)  In addition, emphasizing that section 1170.95, subdivision (d)(3), authorizes the introduction of new or additional evidence at the hearing to determine whether the petitioner is ineligible for resentencing, as occurred here, we asked, "How is the superior court to evaluate that additional evidence if not as an independent fact finder?"  (*Rodriguez*, at p. 242.)  Answering our own question, we stated, "It would be pointless for the court's role in this situation simply to be deciding whether a jury *could* credit a new witness's testimony and thus *could* conclude the petitioner had acted with express malice."  (*Ibid.*)

Ramirez contends the record is unclear whether the superior court in finding she could still be convicted of murder applied a beyond a reasonable doubt or the less rigorous substantial evidence standard of proof and urges us to remand for a new evidentiary hearing.  For his part, the Attorney General continues to advocate for the standard articulated in *Duke*, but argues the superior court applied the standard of proof recognized in *Rodriguez*.  We agree the superior court properly understood its role as independent fact finder and applied the correct standard of proof.[6]

---

[6]     Ramirez argues the superior court failed to understand its role as independent fact finder, believing it was "bound" by this court's opinion affirming Ramirez's convictions.  She quotes the court's statement, "[I]t's the court of appeal . . . .  I have to follow the court of appeal."  A more careful review of the reporter's transcript, however, confirms the superior court was referring to a court of appeal decision holding Senate Bill 1437 and section 1170.95 constitutional when it stated it was bound by the opinion and had to follow it.

15

Significantly, both the prosecutor and Ramirez's counsel urged the court to apply a beyond a reasonable doubt standard. The prosecutor, after reviewing the evidence as described in our opinion on direct appeal and discussing the *Banks*/*Clark* factors, concluded his supplemental brief by stating, "These facts prove beyond a reasonable doubt that petitioner was a major participant in the underlying robbery who acted with reckless indifference to human life, within the meaning of Penal Code section 189, sub[division] (e)(3), which means she could be convicted of murder on felony murder principles under the current law." Ramirez's counsel, concluding her oral argument, which also discussed our opinion's factual summary in light of the *Banks/Clark* factors, stated, "Ms. Ramirez was never a major participant, nor did she act with reckless indifference to human life. The People have the burden of proof to show beyond a reasonable doubt that Ms. Ramirez could be found guilty of second degree murder in line with S.B. 1437 or Penal Code 1170.95. They failed to do so today."

The superior court did not take issue with either party's description of the governing standard of proof or suggest it was applying a different standard. To the contrary, as discussed, the superior court expressly found that Ramirez "beyond a reasonable doubt is a major participant." Although the court's reckless indifference finding is slightly less clear—the court stated Ramirez "did act with recklessness sufficient to find her guilty under this theory"—reading the entirety of the court's comments in context, we are left with no doubt it applied the proper standard of proof, as held in *Rodriguez*, *supra*, 58 Cal.App.5th 227, review granted, and *People v. Lopez*, *supra*, 56 Cal.App.5th 936, review granted.

16

3. *The Superior Court Properly Considered as Evidence This Court's Opinion Affirming Ramirez's Murder Conviction*

Section 1170.95, subdivision (d)(3), provides, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . . The prosecution and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." The appellate opinion resolving a defendant's direct appeal is unquestionably part of the record of conviction. (*People v. Woodell* (1998) 17 Cal.4th 448, 456 ["[w]e see no reason to limit the record of conviction to the trial court record and to preclude reference to the appellate court record, including the appellate opinion"]; *Verdugo, supra,* 44 Cal.App.5th at p. 333, review granted ["[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction"]; see also *People v. Palacios* (2020) 58 Cal.App.5th 845, 856, review granted Feb. 24, 2021, S266701; *People v. Lewis, supra,* 43 Cal.App.5th at pp. 1137-1138, review granted.)

In *Harris, supra,* 60 Cal.App.5th 939, review granted, we expressly rejected the argument made by Ramirez that factual statements in the appellate opinion affirming a petitioner's murder conviction on direct appeal are inadmissible hearsay and not properly considered in section 1170.95 proceedings. The petitioner in *Harris* relied on *Gilmore v. Superior Court* (1991) 230 Cal.App.3d 416, 418, in which the court of appeal had held the description of events in an appellate opinion from a criminal case is inadmissible hearsay in a civil action for wrongful death. (*Gilmore,* at p. 418.) In contrast, we explained, "In postconviction

proceedings, statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial.  (See, e.g., *People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661 [proper to rely on prior appellate opinion when ruling on section 1170.126 resentencing petition]; see also *People v. Saelee* (2018) 28 Cal.App.5th 744, 756 [reliable hearsay may be considered in deciding Proposition 64 petition to recall felony sentence for a marijuana conviction and to resentence as a misdemeanor]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1094-1095 [reliable hearsay may be considered at eligibility hearing under Proposition 47].)  The rules of evidence governing section 1170.95 proceedings 'should be no different than those applied at other analogous postconviction resentencing proceedings.'" (*Harris*, at pp. 953-954; accord, *People v. Clements*, *supra*, 60 Cal.App.5th at p. 612, review granted ["in posttrial proceedings, statements from prior appellate opinions are admissible as reliable hearsay even if they would not be admissible at trial"].)

As the court of appeal explained in *People v. Williams* (2020) 57 Cal.App.5th 652, 661, "[A] 'hearing under section 1170.95 is not a trial *de novo* on all the original charges.' [Citation.]  Rather, it is a *postconviction* proceeding 'due to the Legislature's inclusion of section 1170.95 in Senate Bill No. 1437 . . . , [as] an "act of lenity" [citation], allowing for the retroactive application of the new law governing accomplice liability for felony murder [citation], for defendants already serving valid sentences for murder.' [Citation.]  In allowing for the section 1170.95 postconviction proceeding, the Legislature gave the superior court unfettered discretion to consider 'evidence' without any restriction at the subdivision (d)(3)

18

hearing to determine the petitioner's eligibility for resentencing." Accordingly, the *Williams* court concluded, at the evidentiary hearing to determine whether a petitioner was eligible to be resentenced, the superior court was entitled to consider hearsay evidence, including statements from the appellate opinion affirming the petitioner's murder conviction, "'provided there is a substantial basis for believing the hearsay information is reliable.'" (*Id*. at p. 662.)

To be sure, as Ramirez explains, the jury at her 1996 trial did not find true a felony-murder special-circumstance allegation, and, as a consequence, our opinion affirming her conviction for murder and attempted murder did not expressly address whether she had been a major participant in one of the underlying felonies or had acted with reckless indifference to human life, although it did discuss at some length her culpability beyond the bare elements of the crimes for which she had been convicted in responding to her contention the sentence imposed constituted cruel or unusual punishment. And as she argues, the purpose of an appellate opinion is not to accurately summarize the entire trial record but to explain the court's decision on the issues before it. Similar arguments against permitting use of a prior appellate opinion were considered and rejected by the Supreme Court in *People v. Woodell*, *supra*, 17 Cal.4th at page 457, when it held an appellate opinion is part of the record of conviction in a three strikes case, "[B]ecause *some* opinions might not be probative on a given question is no reason to exclude *all* opinions, including those that *are* probative. If the appellate court did

19

state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial record."[7]

In sum, Ramirez's argument it was error for the superior court to have made any use of our 1997 opinion at her subdivision (d)(3) hearing is not well taken. Because Ramirez has not attempted to identify any specific portion of our opinion that was inaccurate or otherwise improperly considered by the superior court, we reject her contention the court's reliance on our prior opinion requires reversal of the order denying her petition. (See *People v. Clements*, *supra*, 60 Cal.App.5th at p. 613, review granted ["Clements has not identified any portion of our prior opinion that was not relevant or admissible but which the trial judge relied upon, so she's provided no basis for overturning the trial judge's ruling on the ground that it reached its ultimate conclusion that she was not entitled to relief based on irrelevant or inadmissible information in our prior opinion"].)

Based on her contention our opinion on direct appeal had no evidentiary value and should not have been considered in any

[7] The People are not limited to the theory of liability advanced at trial when attempting to prove the petitioner could still be convicted of murder under amended sections 188 and 189. (See, e.g., *People v. Lopez*, *supra*, 56 Cal.App.5th at pp. 941-942, 955-958, review granted [petitioner convicted of second degree murder under a natural and probable consequences theory properly denied resentencing under section 1170.95 based on proof he could be convicted of murder on an implied malice theory].) Indeed, it is a fundamental premise of Senate Bill 1437 that an individual convicted of murder under a now-invalid theory of accomplice liability must be resentenced only if the People cannot prove he or she would still be liable for murder under a different theory based on the record of conviction or new or additional evidence.

20

respect, Ramirez asserts, "This appeal presents an insufficiency claim, because no evidence at all was introduced." She does not otherwise argue the superior court's decision is not supported by substantial evidence. (See *People v. Rodriguez, supra*, 58 Cal.App.5th at p. 238, review granted [on appeal from the superior court's decision denying a petition for resentencing following an evidentiary hearing, we apply the deferential substantial evidence standard of review to the superior court's factual findings]; *People v. Lopez, supra*, 56 Cal.App.5th at p. 953, review granted [same]; see *Duke*, *supra*, 55 Cal.App.5th at p. 120, review granted [same].) Accordingly, we are not called upon to determine whether our prior opinion and other portions of the record of conviction before the superior court supported its finding that Ramirez could now be convicted of felony murder pursuant to section 189, subdivision (e)(3). (Cf. *Clark*, *supra*, 63 Cal.4th at pp. 617-618 ["while the fact that a robbery involves a gun is a factor beyond the bare statutory requirements for first degree robbery felony murder, this mere fact, on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance"]; *Banks*, *supra*, 61 Cal.4th at p. 809 [aiders and abettors "who simply had awareness their confederates were armed and armed robberies carried a risk of death, lack the requisite reckless indifference to human life"].)

4. *The Record on Appeal Does Not Establish Ramirez Received Ineffective Assistance of Counsel*

In her reply brief Ramirez contends her counsel in superior court provided ineffective assistance.[8] Even if that argument

---

[8] After filing her opening brief on appeal, Ramirez, assisted by counsel, filed a companion petition for writ of habeas corpus

21

were not forfeited (see, e.g., *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 [claim of ineffective assistance of counsel raised by defendant for the first time in reply brief is forfeited]; *People v. Harris* (2008) 43 Cal.4th 1269, 1290 [same]), it lacks merit.[9]

also contending she had received ineffective assistance during the superior court proceedings (B309810). On January 13, 2021 we issued an order stating, "This petition will be considered contemporaneously with petitioner's appeal number B305683 currently pending in this court." We have now done so and deny the petition in a separate order.

[9] Whether Ramirez had a constitutionally protected right to the effective assistance of counsel in section 1170.95 proceedings is by no means clear. As she appears to recognize, section 1170.95 is an act of lenity not subject to Sixth Amendment analysis. (See, e.g., *People v. James* (2021) 63 Cal.App.5th 604, 606; *People v. Perez* (2020) 54 Cal.App.5th 896, 908, review granted Dec. 9, 2020, S265254; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175.) Pursuant to section 1170.95, subdivision (c), once the petitioner makes a prima facie showing she falls within the provisions of the statute, she has a right to appointment of counsel (see *Verdugo, supra*, 44 Cal.App.5th at p. 332, review granted; *People v. Lewis, supra,* 43 Cal.App.5th at p. 1140, review granted), a statutory right that may also be grounded in due process. (See *In re Clark* (1993) 5 Cal.4th 750, 779-780 [right to appointment of counsel after making a prima facie case of entitlement to relief in habeas corpus proceeding]; *People v. Shipman* (1965) 62 Cal.2d 226, 232 [same as to *coram nobis* proceeding].) Nonetheless, as our colleagues in Division Two of this court explained in *People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted October 14, 2020, S264278, "[H]aving a constitutional right to the appointment of counsel is not the same as having a constitutional right to the effective assistance of that counsel [citation], and our Supreme Court has steadfastly held

Ramirez argues the supervising lawyer and certified law student representing her did not understand the difference between a hearing to determine whether the petitioner had made the prima facie showing required for issuance of an order to show cause (§ 1170.95, subd. (c)) and the evidentiary hearing on the merits once the prima facie showing had been made (§ 1170.95, subd. (d)(3)) and were confused as to whether Ramirez's murder conviction and our opinion affirming it addressed (in a pre-*Banks*/*Clark* setting) the issue whether Ramirez was a major participant in the underlying felony who had acted with reckless indifference to human life. The record belies both contentions.

As to the first point, at the hearing on December 17, 2019 supervising counsel clearly stated the papers submitted to date on behalf of Ramirez "met [Ramirez's] initial burden"—that is, the prima facie case—and it was now the People's burden "to prove to the court beyond a reasonable doubt that she could be convicted today under the new law." Because both parties had stated they would rely on the record of conviction and did not intend to introduce new or additional evidence, counsel advised the court they were ready to proceed to the merits at that hearing or to defer that issue to a later date. There is no indication of any confusion as to the elements of section 1170.95, only uncertainty as to the timing the court and the prosecutor wanted.

---

that 'there is no constitutional right to the effective assistance of counsel' in state postconviction proceedings," quoting *People v. Boyer* (2006) 38 Cal.4th 412, 489.

Because the record fails to demonstrate that Ramirez's counsel performed below an objective standard of reasonableness, however, we need not address that issue.

As to the second point, counsel for Ramirez were well aware the issue of major participant and reckless indifference had not been addressed in our opinion affirming her murder conviction.  Indeed, in Ramirez's reply brief in the superior court, counsel emphasized, "Although the California Court of Appeal on Ms. Ramirez's direct appeal, decided in 1997, found that she did play a 'crucial' role in the crime because [of] her relationship with Legarreta family [citation], the court did not address whether Ms. Ramirez was a 'major participant' and whether she acted with 'reckless indifference to human life.'  The court did not have the benefit of the subsequent decision in 2015 of *People v. Banks*, but more importantly was not addressing the issues in Ms. Ramirez's direct case."  There was no misunderstanding as to what was decided at Ramirez's trial or on appeal.

Ramirez also contends in two summary sentences that her counsel incorrectly argued the court should use a substantial evidence standard of proof at the evidentiary hearing and improperly agreed the court could consider our appellate opinion as part of the record of conviction.  As discussed, the first point is factually incorrect; the second is legally unsound.

## DISPOSITION

The order denying Ramirez's petition for resentencing is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J.

24